**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHRISTY GRIFFITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CONTEXTMEDIA, INC.,** and DOES 1-25<br><br>Defendant. | Civil Case No.: 16-2900<br><br>District Judge: Hon. Elaine S. Bucklo<br>Magistrate Judge: Hon. Mary M. Rowland |

**Plaintiff's Memorandum in Support of Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(3), or, in the Alternative, to Defer Consideration of the Motion Until Necessary Discovery is Completed**

## INTRODUCTION

This case presents the rare situation in which most, if not all, of the class certification elements are clearly established from the pleadings. Plaintiff Christy Griffith filed a putative class action complaint stemming from Defendant ContextMedia, Inc.'s practice of sending automated text messages to cellular telephones after recipients asked Defendant, in writing, to "stop," in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

As is evident from the allegations, the elements of class certification are met. The class is sufficiently numerous, as discovery will show. There are multiple common questions of law or fact, and these questions predominate over any minor individualized issues. Plaintiff's claims, as outlined in her complaint, are typical of the defined class. Plaintiff and counsel are adequate. A class action is the superior method of resolving these claims. And finally, the class is ascertainable, as Plaintiff has defined the class with reference to objective criteria and class membership can be easily determined through an examination of Defendant's records as well as Plaintiff's and putative class members' call logs.

Should the Court determine that more information is needed with respect to any of the elements, Plaintiff respectfully requests that the Court defer consideration of this Motion for Class Certification until such information is obtained in discovery.

## BACKGROUND

On March 7, 2016, Plaintiff filed the instant putative class action (followed by an Amended Complaint on June 9, 2016), alleging that, on more than two dozen occasions, she replied to one of Defendant's automated and daily "Nutrition Tips" text messages with "stop," as instructed by

the text messages themselves, but the text messages continued. Plaintiff alleges that she received more than 80 text messages after the first time she asked Defendant to stop.

Under long-standing Seventh Circuit precedent, as well as a recent FCC order, call recipients are permitted to revoke their consent in any reasonable manner. *See, e.g.*, *Sengenberger v. Credit Control Servs.*, Case No. 09-cv-2796, 2010 U.S. Dist. LEXIS 43874, *10-12 (N.D. Ill. May 5, 2010) (finding that calls made after a TCPA plaintiff revoked his consent were actionable); *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 977 (W.D. Wisc. 2013) ("I … conclude that consumers have the right to revoke consent to receive autodialed calls under the [TCPA]."); 2015 TCPA Order, 30 FCC Rcd. 7961, 7989-900 ¶ 47 (2015) ("[A] called party may revoke consent at any time and through any reasonable means."). Plaintiff here not only revoked consent in a reasonable manner, but in the manner expressly called for in Defendant's text messages. Accordingly, if the text messages sent after that point were sent using an automatic telephone dialing system, they violated the TCPA.

Plaintiff further alleges that Defendant has sent such unsolicited messages to individuals nationwide during the proposed class period and now moves for an order, pursuant to the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, certifying a class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant ContextMedia, Inc. sent, in the past four years, a text message, other than an opt-out confirmation text message, using an automatic telephone dialing system, after Defendant's records, or the records of any entity with whom Defendant contracted to provide text messaging services, indicate Defendant or that entity received a text message containing the word "STOP" from that cellular telephone number.

> ("Class")

2

As set forth below, even at this early stage, the requirements of Rule 23 can be established. However, should the Court be unpersuaded that class certification is appropriate at this early stage, Plaintiff asks that the Court defer ruling on this motion until relevant discovery is completed.

## LEGAL STANDARD

Rule 23 contains two sets of requirements which change depending on the type of case brought and remedies sought. There are the basic requirements that must be met in all cases: numerosity, which requires the class to be "so numerous that joinder of all members is impracticable;" commonality, which requires "questions of law or fact common to the class;" typicality, which requires "the claims or defenses of the representatives party [to be] typical of the claims or defenses of the class;" and finally, adequacy, which requires a showing that "the representative parties will fairly and adequately represent the class." Fed. R. Civ. P. 23(a)(1-4).

For cases brought pursuant to Rule 23(b)(3), a plaintiff must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are commonly known as "predominance" and "superiority," respectively. *See, e.g.*, *Vill. Of Bedford Park v. Expedia, Inc. (WA)*, 309 F.R.D. 442, 446, 452 (N.D. Ill. 2015). "The party seeking class certification bears the burden of showing, by a preponderance of the evidence, that a proposed class meets the requirements of Federal Rule of Civil Procedure 23." *Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016). In the TCPA context, class certification under Rule 23(b)(3) TCPA is the norm, rather than the exception. *See, e.g. Chapman v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 U.S. Dist. LEXIS 16866, *9, *55 n.11 (N.D. Ill. Feb. 11, 2014) (collecting cases); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

## DISCUSSION

**A.    Rule 23's Requirements**

     **i.    Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Numerosity, like all Rule 23 requirements, must be proven by a preponderance of the evidence. While there is no minimum number of members needed for a suit to proceed as a class action, 40 members is generally believed to be sufficient. *Bailiff v. Vill. Of Downers Grove*, Case No. 11-cv-3335, 2011 U.S. Dist. LEXIS 145391, *7 (N.D. Ill. Dec. 16, 2011). Courts are "entitled to make common sense assumptions in order to support a finding of numerosity." *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 662 (N.D. Ill. 1996).

Plaintiff alleges – and discovery will show – that Defendant sent unauthorized text messages to cellular telephone's nationwide who had previously asked Defendant to "stop" sending its messages. Plaintiff believes the number of class members to be in the hundreds or thousands, if not more. This would be sufficient to satisfy numerosity. *See, e.g.*, *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (finding numerosity met where the court could reasonably infer that hundreds, if not thousands, of persons were included in the proposed class); *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1171 (N.D. Ill. 1995) (finding numerosity met where hundreds of transactions fit the class definition). Accordingly, the proposed Class satisfies the numerosity requirement.[1]

     **ii.    Rule 23(a)(2): Commonality**

---

[1]    To the extent the Court requires additional details regarding the number of members in the Class, such information may be readily obtained through discovery and Defendant's records.

Rule 23(a)(2) requires questions of law or fact common to the class. While a single common question is enough, the question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Thus, "the key to commonality is whether a classwide proceeding can generate *answers* apt to drive the resolution of the litigation." *Parish v. Sheriff of Cook Cnty.*, Case No. 07-C-4369, 2016 U.S. Dist. LEXIS 43108, *18 (N.D. Ill. Mar. 31, 2016).

Here, *all* of the questions in this litigation are common to the class. They include, but are not limited to:

    a.   Whether text messages are calls under the TCPA;

    b.   Whether texting "stop" in response to one of the text messages is sufficient revocation of consent;

    c.   Whether the equipment Defendant used to send all of these texts was an "automatic telephone dialing system";

    d.   Whether Defendant sent texts after receiving a "stop" request.

These questions are sufficient to satisfy Rule 23(a)(2)'s commonality requirement.

  **iii.**    **Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley—Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This requirement "primarily directs the district court to focus on whether

the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* Immaterial factual distinctions will not defeat typicality.

Here, Plaintiff's claims arise from the exact same relevant legal and factual circumstances as those of the class as a whole. Plaintiff alleges that she continued receiving text messages from Defendant after asking Defendant to "stop," as instructed in the text messages. This caused her injury in the form of wasted time and invasion of privacy, and among others, and is entitled to statutory damages. These injuries and the course of conduct causing those injuries is uniform throughout the class.

There are, of course, likely to be technical differences between Plaintiff and some class members. For example, Plaintiff may have sent "stop" more times than others. Plaintiff also may have first opted in to receiving the text messages in a different method than others. However, these differences are not material to the actual claims of the Class, which strictly involve text messages sent to Class members after those members asked Defendant to "stop."

Plaintiff is also not subject to any unique defenses. Any defense relating to the nature of the text messages, the systems used to send the text messages, and the validity of "stop" as a method of revocation are potentially applicable to the whole class, not just Plaintiff.

Finally, Plaintiff's interests in recovery damages for Defendant's unsolicited text messaging campaign are directly aligned with each member of the putative class.

### iv.    Adequacy

Rule 23(a)(3) requires the representative parties to fairly and adequately protect the interests of the class. This inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

6

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26. This requirement tends to merge with the commonality and typicality inquiries, "which serve as guideposts for determining whether … maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626, n.20 (quotations and citations omitted). In determining the adequacy of representation, the Court must consider "(1) the adequacy of the named plaintiff's counsel" and "(2) the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Kasten v. St.-Gobain Perf. Plastics Corp.*, 556 F. Supp. 2d 941, 959-60 (W.D. Wisc. 2008) (quoting *Retired Chicago Police Association v. Chicago*, 7 F.3d 584, 598 (7th Cir. 1998)). The latter element essentially means that if class members have "antagonistic or conflicting claims," there is not adequate representation. *Id.*

The adequacy requirement is met here. Plaintiff's claims involve the exact same underlying conduct affecting all members of the proposed class. Indeed, the claims are so identical, and the statute so clear, that the actions Plaintiff would need to take and arguments she would need to make (such as in discovery or motion practice) to prosecute her action individually would necessarily serve to advance the cases of all absent class members. For example, a decision on whether post-"STOP" text messages violate the TCPA, or on whether the equipment Defendant uses qualifies as an automatic telephone dialing system, would advance the claims of all class members. Plaintiff's interests align completely with members of the class.

Plaintiff's counsel also satisfies the adequacy requirement. Attorney Glapion has extensive experience in litigating TCPA matters. Since founding The Glapion Law Firm in May 2015,

7

Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA case in which the court has granted preliminary approval to an $8.5 million non-reversionary class action settlement. Attorney Glapion has also initiated and is currently litigating several other putative TCPA class action cases, including *Johnson v. Uber Technologies, Inc.*, Case No. 16-cv-50113 (N.D. Ill. 2016), *Allard v. SCI Direct, Inc.*, Case No. 16-cv-1033 (M.D. Tenn. 2016), and *Evans v. National Auto Division*, Case No. 15-cv-8714 (D.N.J. 2015). Since May 2015, Attorney Glapion has recovered over $1m in individual TCPA cases. Attorney Glapion previoously worked at Lieff, Cabraser, Heimann & Bernstein, where he primarily focused on consumer protection cases, including several high profile TCPA class cases such as *Henrichs v. Wells Fargo Bank, N.A.*, 13-CV-05434 (N.D. Cal.) and *Ossola v. American Express Co.*, 13-cv-04836 (N.D. Ill.); *Balschmiter v. TD Auto Finance, LLC*, 13-cv-01186 (E.D. Wisc.). Attorney Glapion is a 2012 graduate of Harvard Law School and a former clerk to The Honorable Freda L. Wolfson in the District of New Jersey.

v.    **Rule 23(b)(3): Predominance**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." This "requirement is satisfied when common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication. *Messner v. Northshore Univ. healthSystem*, 669 F.3d 802, 815 (87th Cir. 2012) (quotation omitted). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Haliburton Co.*, 131 S. Ct. 2179, 2184 (2011). *Amchem Prods.*, 521 U.S. at 623 (1997).

8

To succeed on a TCPA claim of the kind at issue here, a plaintiff must show that 1) the defendant made or initiated telephone calls 2) to plaintiff's cellular telephone number 3) using an automatic telephone dialing system. While consent is mentioned in the TCPA, it is not an element of a plaintiff's prima facie case – it is an affirmative defense to be raised and proved by TCPA defendants. *See, e.g.*, *Paldo Sign & Display Co. v. Wavener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014). As discussed *supra*, consent can be revoked. 2015 TCPA Order, 30 FCC Rcd. at 7989-900 ¶ 47.  If a plaintiff prevails, he or she is entitled to $500 per call made in violation of the statute. If a violation is willful, a court can treble those damages to $1,500 per call.

### a.     Common Proof that Defendant Made or Initiated the Texts

Whether or not Defendant made or initiated the texts can be resolved for all class members in a single adjudication. Indeed, it is difficult to see how it would be the case otherwise. Defendant either made or initiated the text messages coming from its short code numbers, or it did not. There are no individual questions.

### b.     Common Proof that the Messages were Sent to Cellular Phones

Defendant's systems were programmed to automatically send text messages. Text messages overwhelmingly, if not exclusively, are sent to mobile devices. It would not make sense to send text messages to a landline, for example. Furthermore, there are companies that are able to take a list of numbers and determine which of those numbers belong to a cellular telephone. *See, e.g.*, *Booth v. Appstack, Inc.*, Case No. 13-1533, 2016 U.S. Dist. LEXIS 68886, *27-28 (W.D. Wash. May 24, 2016) (finding no individualized issues in determining if a number belonged to a cell phone because there was generally applicable methodology to determine whether the dialed number was

assigned to a cellular telephone service). Accordingly, the fact that the text messages were sent to cell phones is susceptible to common proof.

### c.     Common Proof of Use of an Autodialer

The system Defendant used to send its text messages is susceptible to common proof. The nature of the system Defendant used to send its texts is universal to the class and can be revealed and evaluated through Defendant's documentation about the system. This issue is therefore susceptible to common proof rather than any individualized inquiries.

Even if Defendant used multiple systems (concurrently or over time), each system certainly covers large swaths of putative class members. Accordingly, this would be insufficient to defeat predominance.

### d.     Common Proof of Revocation of Consent

Any argument that individualized issues of consent preclude class certification defeat predominance must fail here. "Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA[sic] on a case-by-case basis, after evaluating the specific evidence available to prove consent." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014). To show that individualized issues of consent predominate, a defendant must "set[] forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cell phone." *Id.* (citing *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013)). On the other hand, a defendant's "vague assertions about consent" are insufficient to defeat commonality. *Id.*; *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (rejecting defendant's argument that issues of individualized consent

defeated commonality because the defendant "did not show a single instance where express consent was given before the call was placed.").

The proposed Class is not defined to include every person to whom Defendant sent text messages, which would potentially invite individualized issues (if not a complete defense as to all class members). The proposed Class only includes those who sent a "stop" text message to Defendant. Whether such a message was sufficient for revocation is susceptible to common proof, and the telephone numbers of those to whom Defendant sent post-"stop" messages can be determined through Defendant's records by cross-referencing 1) the numbers that said "stop" with 2) the numbers to which Defendant sent text messages and when.

### e.    Common Proof of Damages

Damages here are susceptible to common proof. While Plaintiff alleges actual damages, which occasionally require individualized inquiries in other circumstances, the actual damages complained about here are universal to the class. All text messages take storage space on a user's device. Indeed, each individual character of a text message takes up additional space. Furthermore, each Class member wasted time tending to the messages (either by deleting the texts or texting stop), and suffered a nuisance and invasion of privacy when the text messages continued after asking Defendant to stop. While these actual damages small, they are nonetheless sufficient to confer standing on all class members. *See, e.g.*, *Halperin v. Int'l Web Servs., LLC*, Case No. 13-C-8573, 2014 U.S. Dist. LEXIS 138600, *7 (N.D. Ill. Sept. 30, 2014) ("…Article III standing … requires only an injury, no matter how small.") (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)).

The exact size of each of those categories of actual damages need not be calculated on an individual basis, however. The TCPA provides for statutory damages of $500 to $1500 per call or text. "Statutory damages [under the TCPA] follow a finding of liability as a matter of course." *Fitzgerald v. Gann Law Books*, Case No. 11-04287, 2014 U.S. Dist. LEXIS 174567, *10 (D.N.J. Dec. 17, 2014) (evaluating a proposed settlement and discussing the risks of establishing damages). As a result, should liability be established, damages can be shown on a class-wide basis simply by multiplying $500 or $1500 by the number of text messages Defendant sent to Class members.

### f. Common Proof of Willfulness

The FCC has determined that "'[w]illful' in [the TCPA] context means that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtge., L.L.C.* (2007), 22 FCC Rcd. 9453, 9470, ¶ 45 n.86. This comports with the definition given to "willful" in the Communications Act of 1943, of which the TCPA is a part: "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter[.]" 47 U.S.C. § 312(f).

The majority of courts to decide this question have similarly found that a TCPA defendant acts willfully when it acts "voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute." *Sengenberger*, 2010 U.S. Dist. LEXIS 43874 at *17. In *Sengenberger*, the court awarded treble damages to Plaintiff because "[t]here is no dispute as to whether Defendants intentionally made the contested phone calls to Plaintiff." *Id.* Also in the Seventh Circuit, the court in *Bridgeview Health Care Ctr., Ltd. v. Clark* "adopt[ed] the

more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute." Case No. 09-C-5601, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013). Courts elsewhere have found the same. *See, e.g. Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass. 2014) ("[M]ost courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware it was violating the statute."); *Roylance v. ALG Real Estate Servs.*, Case No. 5:14-cv-2445, 2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2015); *Charvat v. Ryan*, 116 Ohio St. 3d 394 (2007).

Finally, the Supreme Court has held (albeit in a different context) that the term "[w]illful … amounts to nothing more than this: that [the actor] knows what he is doing, and intends to do what he is doing, and is a free agent. And willfully does not imply that an act done in that spirit was necessarily a malicious act." *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983)

While the Court does not need to resolve the appropriate standard now, it is nevertheless clear that since all text messages included in the proposed Class definition followed the same pattern, whether Defendant acted willfully or knowingly can be resolved on a class wide basis, especially if the Court follows the most common interpretation that "willful" means "volitional."

**vi.**     <u>**Rule 23(b)(3): Superiority**</u>

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Factors to be considered include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions (B) the extent and nature of any litigation concerning the controversy already begun by or against class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

Here, the class action method is superior. The potential claims are so uniform and straightforward, and the number of claims so numerous, that it is desirable to concentrate the litigation in one particular forum. This outweighs any interest in individually controlling the prosecution of separate actions. In addition, to Plaintiff's knowledge, there is no litigation concerning this controversy currently pending before any court. Finally, there will be few difficulties in maintaining any aspect of this class action.

### vii.  Ascertainability

While not explicit in the Federal Rules of Civil Procedure, Seventh Circuit courts require "ascertainability," which means that the "classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). This is a much more easily satisfied standard than the heightened ascertainability requirements found in other circuits, such as the Third. *Id.* at 661. Seven Circuit courts check for three common problems: classes that are defined too vaguely; classes that are defined by subjective criteria; and classes that are fail-safe.

The Class definition here avoids all three problems. It is defined clearly. There are no subjective criteria involved, focusing instead objectively on persons who sent a "stop" text messages. And the class definition is not fail safe – if Defendant prevails for any reason with respect to members of the Class, those Class members will be barred by *res judicata* from relitigating their claims. For example, if Defendant prevails that its equipment was not an automatic telephone

14

dialing system, or that "stop" is not sufficient revocation, Class members would not be permitted to file their own litigation to relitigate these issues. Thus, ascertainability is met.

**B.      In the Alternative, the Court Should Defer Ruling on this Motion Until After Discovery**

A court must determine "at an early practicable time after a person sues … as a class representative" whether "to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). As courts have held "[i]f the parties have yet to fully develop the facts needed for certification, then they can also ask the court to delay its ruling to provide time for additional discovery or investigation." *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Such a "procedure comports with Federal Rule of Civil Procedure 23(c)(1)(A)." *Id.*

While Plaintiff believes that there is currently enough available information to justify an early certification of the proposed class, should the Court have reservations or believe that more information is necessary, Plaintiff respectfully asks that the Court (1) enter and reserve ruling on the Motion for Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; and (3) grant leave to file an amended motion upon the conclusion of discovery relating to certification issues.

**CONCLUSION**

Plaintiff respectfully asks the Court to certify the class, defined herein, pursuant to Fed. R. Civ. P. 23(b)(3). In the alternative, should the Court find that more information is necessary, Plaintiff asks that the Court (1) enter and reserve ruling on the Motion for Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; and (3) grant leave to file an amended motion upon the conclusion of discovery relating to certification issues.

Date: August 1, 2016                              */s/ Jeremy M. Glapion*

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

16