UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTY GRIFFITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CONTEXTMEDIA, INC.,** and DOES 1-25<br><br>Defendant. | Civil Case No.: 16-2900<br><br>District Judge: Hon. Elaine S. Bucklo<br>Magistrate Judge: Hon. Mary M. Rowland |

**Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss**

## Table of Contents

Introduction ..................................................................................................................................1

Background ..................................................................................................................................1

Legal Standard .............................................................................................................................3

Discussion ................................................................................................................................... 4

    I.   *Spokeo* ................................................................................................................ 4

    a.   The Decision.................................................................................................. 4

    b.   The Aftermath ................................................................................................5

    II.   Plaintiff has Alleged Concrete and Particularized Injuries Sufficient for Article III Standing. ...................................................................................................................10

    a.   Lost time .......................................................................................................10

    b.   Device Storage .............................................................................................13

    c.   Invasion of Privacy ......................................................................................10

    III.   The TCPA Expressly Authorizes Injunctive Relief, so Irreparable Harm Need Not Be Shown ......................................................................................................................14

    IV.   Plaintiff is Entitled to Attorneys' Fees if She Prevails on Her Class Claim. .....................15

Conclusion .................................................................................................................................15

**Introduction**

Arguments that a plaintiff lacks Article III standing under the TCPA for the receipt of unwanted phone calls "[are] frivolous." *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 727 (S.D.N.Y. July 7, 2015). This was true before *Spokeo*, and, more importantly, continues to be true today. Almost every court to consider a 12(b)(1) Motion to Dismiss TCPA claims post-*Spokeo* has denied the Motion. The Court need not take Plaintiff's word on this, as the complete absence of relevant citations in Defendant's memorandum speaks volumes.

Defendant nonetheless ignores the clear state of the law and asks the Court to dismiss Plaintiff's Complaint, arguing that Plaintiff's allegations – that Defendant continued to send her text messages after she asked Defendant to stop – did not cause injury sufficient for Article III standing. This cannot be so. Indeed, if there can be Article III standing stemming from invasion of privacy in any TCPA case, there must be in this case. Plaintiff and putative class members are all persons who were sent text messages after expressly asking Defendant, in writing, to "stop." The invasion of privacy just does not get more explicit.

Defendant also argues that Plaintiff is not entitled to seek declaratory or injunctive relief, or attorneys' fees. However, injunctive relief is authorized by the statute, and proper here. Attorneys' fees are authorized pursuant to the "common fund" doctrine. Thus, Defendant's Motion to Dismiss should be denied.

**Background**

The facts of this case are straightforward. On March 7, 2016, Plaintiff filed a putative class action complaint alleging Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by sending text messages using an automatic telephone dialing system

1

after Plaintiff and the putative class members asked defendant, in writing, to "STOP." (*See* Complaint, Dkt. 1.) After a brief stay of this matter pending the Court's decision in *Spokeo, Inc. v. Robins*, [136 S. Ct. 1540](#) (2016), Plaintiff filed an Amended Complaint. (Dkt. 18.)

In her Amended Complaint, Plaintiff alleges that, in July 2015, she opted in to receiving "nutrition tips" via autodialed text messages from Defendant. (Am. Compl. ¶ 17.) However, no later than November 29, 2015, Plaintiff replied "STOP" to one of the messages, which was the method indicated in the messages to "opt out" of further text messages. (*Id.* at ¶¶ 25-29.) However, the texts did not stop. (*Id.* at ¶¶ 30-31.) Plaintiff continued her attempts to opt-out of the messages, texting "STOP" or some variation no less than 25 times, yet the texts continued. (*Id.* at ¶¶ 5, 25-30.) Plaintiff estimates that she has received at least 80 text messages after first asking Defendant to stop. (*Id.* at ¶ 31.) These text messages all used an automatic telephone dialing system. (*Id.* at ¶¶ 15, 31.) Because the post-"STOP" messages were made without her consent, each text message violated the TCPA. Each text also caused injury-in-fact in the form of "time lost" dealing with the texts, storage space used by the texts, and invasion of privacy. (*Id.* at ¶ 41.)

Accordingly, Plaintiff filed the Amended Complaint on behalf of herself and all persons to whom Defendant sent autodialed text messages after those individuals replied "STOP" to one of Defendant's messages. (*Id.* at ¶ 46.) Because the TCPA allows a Plaintiff to recover the greater of actual damages or statutory damages, Plaintiff seeks $500 to $1500 per text in statutory damages for herself and each class member, pursuant to 47 U.S.C. § 227(b)(3). (*Id.* at ¶¶ 67-68.)

On July 14, 2016, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, arguing that Plaintiff does not have Article III standing to pursue her claims in Federal Court.

Defendant also argues that Plaintiff cannot pursue injunctive or declaratory relief, or attorneys' fees. For the reasons set forth below, Plaintiff now opposes Defendant's Motion.

**Legal Standard**

Rule 12(b)(1) "provides a defendant a procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks subject-matter jurisdiction." *Orange v. Burge*, Case No. 04-C-0168, 2005 U.S. Dist. LEXIS 7234, *10 (N.D. Ill. Mar. 30, 2005). The standard of review depends on how the defendant frames the motion. "Where a 12(b)(1) motion raises a facial challenge to jurisdiction – i.e., where it challenges the sufficiency of the complaint's allegations for jurisdiction – [the Court] must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the Plaintiff." *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, Case No. 16-c-3401, 2016 U.S. Dist. LEXIS 88467, *4 (N.D. Ill. July 7, 2016) (Bucklo, J.) (quotations omitted). "Where the motion presents a factual challenge – i.e., where it disputes the truth of the allegations on which jurisdiction is premised – [the Court] may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quotations omitted). Defendant's challenges appear primarily to be facial.

Article III, section 2 of the United States Constitution limits the judicial power of federal courts to cases and controversies. Article III standing relates to a court's subject matter jurisdiction over a matter. *Lee v. Deloitte & Touche LLP*, 428 F. Supp. 2d 825, 829 (N.D. Ill. 2006). To qualify as a case or controversy, a plaintiff in federal court must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547. To establish an injury-in-

fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

Only the requirement of concreteness is at issue here. As discussed below, the types injury-in-fact that the unlawful text messages caused clearly meet the requirement of concreteness as clarified in *Spokeo*.

## Discussion

### I. *Spokeo*

#### a. The Decision

In *Spokeo*, the defense bar sought a ruling that would have eviscerated causes of action seeking statutory damages. *Mey v. Got Warranty, Inc.*, Case No. 15-cv-101, 2016 U.S. Dist. LEXIS 84972, *7 (N.D. W. Va. June 30, 2016). Instead, on May 16, 2016, the Court "issued a narrow ruling remanding the case to the Ninth Circuit solely on the basis that it failed to address the extent to which plaintiffs' injuries were 'concrete' as opposed to merely particularized, notwithstanding prior Supreme Court precedent requiring a finding of both." *Id.* (citing *Spokeo* at 1545). As Justice Alito noted, "[w]e have made it clear time and time again that an injury in fact must be both concrete *and* particularized." *Spokeo* at 1548. The Supreme Court explicitly took no position on whether Robins' injuries were in fact concrete for standing purposes. *Id.* at 1550. In other words, the Supreme Court simply confirmed the long-established principle that injury-in-fact is one of three elements required for standing, and provided some texture to those elements. *Id.* at 1547.

In particular, *Spokeo* focused on the "concreteness" requirement. The Court acknowledged that either tangible or intangible injuries can satisfy the requirement of

4

concreteness. *Id.* at 1549. Where the pled injury is intangible, the Court found "it instructive to consider whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The Court noted that, for example, "the law has long permitted recovery by certain tort victims, even if their harms may be difficult to prove or measure. *See,* e.g., Restatement (First) of Torts §§ 569 (libel), 570 (slander per se)[.]" *Id.* at 1549.

The Court also wrote that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law … .'" *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Congress "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*

The Court did observe that a "bare procedural violation, divorced from any concrete harm," will not satisfy the concreteness requirement. *Id.* But this observation has little application here, because TCPA claims do not seek to enforce "bare procedural" rights. When Congress enacted the TCPA, it "enacted … *substantive* prescriptions and provided for a regulatory regime administered by a federal agency." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 751 (2012).

Ultimately, and after much ado, "*Spokeo* … created no new law[.]" *Mey,* 2016 U.S. Dist. LEXIS 84972 at *7.

    **b. The Aftermath**

Virtually every court to examine Article III standing in the TCPA context post-*Spokeo* has found standing present. The most thorough of these decisions was issued on June 30, 2016 in *Mey v. Got Warranty, Inc.*, 2016 U.S. Dist. LEXIS 84972. In *Mey*, plaintiff brought a lawsuit pursuant to

5

the TCPA alleging that defendant had placed autodialed telemarketing calls to his cellular telephone, which had been registered on the "Do Not Call Registry," without plaintiff's consent. *Id.* at *2-3. Defendant moved to dismiss the case on the grounds that plaintiff did not have Article III standing. The *Mey* court undertook a detailed analysis of Article III standing post-*Spokeo* in the TCPA context. The court wrote that "unwanted phone calls cause concrete harm." *Id.* at *7. It wrote that "all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could be consequential." *Id.* at *8. The court continued that, more importantly, "such calls also cause intangible injuries" such as "(1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction." *Id.* at *8.

  The court discussed each of these intangible harms separately. With respect to "invasion of privacy," the court quoted *Spokeo*'s instruction to consider, in deciding whether a statutory violation alone is sufficient for Article III standing, the relationship between a statutory cause of action and harms that have been regarded as providing a basis for suit at common law, and wrote that "[i]nvasion of privacy is just such an intangible harm[.]" *Id.* at *8-9. The court analogized the TCPA to an intrusion upon seclusion privacy claim. The court further wrote that "[e]ven if invasion of privacy were not a harm recognized as redressable through a common law tort claim, it would meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm." *Id.* at *10. The court found similarly with respect to the intrusion upon the capacity of the consumer's cell phone, writing that this harm is closely related to the "ancient common law claim of trespass to chattels[.]" *Id.* at *13. Finally, the court pointed

6

to a number of courts – including several in the Seventh Circuit – which had found lost time to be an adequate injury-in-fact. *Id.* at *16-17 (citing, e.g. *Leung v. XPO Logistics*, Case No. 15-cv-03877, 2015 U.S. Dist. LEXIS 176820, *9 (N.D. Ill. Dec. 9, 2015); *Martin v. Leading Edge Recovery Sols., LLC*, Case No. 11-cv-5886, 2012 U.S. Dist. LEXIS 112795, *11 (N.D. Ill. Aug. 10, 2012); *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011)). The court denied Defendant's Motion.

There are numerous other cases that have found similarly:

- In the Western District of Washington, the court wrote that plaintiff's TCPA allegations were sufficient for Article III standing post-*Spokeo* because "the violations alleged … if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls." *Booth v. Appstack, Inc.*, Case No. 13-1533, 2016 U.S. Dist. LEXIS 68886, *17 (W.D. Wash. May 25, 2016).

- In the Northern District of Georgia, the court wrote that "a violation of the TCPA is a concrete injury." *Rogers v. Capital One Bank (USA), N.A.*, Case No. 15-cv-4016, 2016 U.S. Dist. LEXIS 73605, *4 (N.D. Ga. June 7, 2016).

- In the Eastern District of Kentucky, the court examined a TCPA case alleging autodialed telephone calls post-*Spokeo* and found Article III standing. *Caudill v. Wells Fargo Home Mortg., Inc.*, Case No. 16-066, 2016 U.S. Dist. LEXIS 89136 (E.D. Ky. July 11, 2016). The court wrote that plaintiff's allegation that he had suffered an "invasion of privacy" was sufficient for Article III standing because such a harm had "traditionally been regarded as providing a basis for a lawsuit in the United States." *Id.* at *4.

- In the Northern District of California, the court found Article III standing in the TCPA context where the plaintiff alleged that he was harmed because defendant invaded his privacy with a single unwanted text message. *Cour v. Life360, Inc.*, Case No. 16-cv-805, 2016 U.S. Dist. LEXIS 98945, *4-7 (N.D. Cal. July 28, 2016). The court rejected defendant's attempts to distinguish the calls in *Booth* and *Rogers* as more pervasive on the grounds that "such distinctions go only to the extent of the injury, not whether there was a concrete injury at all." *Id.* at *7.

- In the District of Minnesota, the court found Article III standing present, explaining that the invasion of privacy unwanted calls cause is sufficient for Article III standing. *See Ung v. Universal Acceptance Corporation*, Case No. 15-127, 2016 US Dist. Lexis 102363 (D. Minn. Aug. 3, 2016). The court also pointedly noted that "[Defendant] does not seriously quibble with the notion that receipt of autodialed calls constitutes an invasion of privacy sufficient to create standing." *Id.*

Even the Supreme Court has twice recognized that TCPA plaintiffs generally have Article III standing. In its January 2016 opinion in *Campbell-Ewald Co. v. Gomez*, a TCPA case involving a single text message, Article III standing was plainly on the Justices' minds (having already heard argument in *Spokeo*), as Chief Justice Roberts went out of his way to note that the plaintiff's receipt of unwanted text messages is an "injury in fact." 136 S. Ct. 663, 679 (2016) (Roberts, C.J., dissenting) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell. To remedy that injury, he requested $1500 in statutory damages for each unauthorized text message."). This is especially significant given the obligation of federal

8

courts to *sua sponte* raise and decide any issue about their subject matter jurisdiction, including standing. *See, e.g.*, *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it[.]"). *Campbell-Ewald* marks the second time in recent years that the Supreme Court has rejected a challenge to subject matter jurisdiction in a TCPA case without expressing any doubt that the recipient of the unwanted calls has standing. *See also Mims*, 132 S. Ct. at 751.

Plaintiff is aware of two cases that have been decided the other way. In one of these cases, plaintiff admitted to voluntarily subjecting herself to unwanted phone calls. *Stoops v. Wells Fargo Bank, N.A.*, Case No. 15-83, 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016). The court wrote that "[b]ecause Plaintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits, the calls are not 'a nuisance and an invasion of privacy.' Thus, Plaintiff was not required to 'tend to unwanted calls' and the calls did not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers." *Id.* at *34. However, the court provided a string site of "several district courts [that] have held that a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls." *Id.* at *28-29. The court explained that it was not following those other cases only because "the facts of the instant case have not arisen in other TCPA actions because Plaintiff has admitted that she files TCPA actions as a business." *Id.* at *29. If it were not for the facts plainly being inapposite (and on the extreme end of the spectrum), the court implied that the type of injuries Plaintiff Griffith has pled – nuisance, invasion of privacy, and tending to unwanted calls – would otherwise be sufficient for Article III standing.

9

In the other case, the court dismissed without prejudice the complaint of an unwanted fax recipient because he failed to provide "even general factual support" to support an injury. *Sartin v. EKF Diagnostics, Inc.*, Case No. 16-1816, 2016 U.S. Dist. LEXIS 86777, *8 (E.D. La. July 5, 2016). The complaint provided "no factual material from which the Court can reasonably infer what specific injury, if any, Dr. Sartin sustained through defendants' alleged statutory violations." *Id.* at *9. Accordingly, the court dismissed the complaint, but provided plaintiff leave to amend. Because the *Sartin* plaintiff made no effort to plead injury-in-fact, *Sartin* is inapplicable.

## II. Plaintiff has Alleged Concrete and Particularized Injuries

Plaintiff has clearly and plausibly alleged at least three forms of concrete and particularized injury: invasion of privacy, lost time, and use of data storage. While none of these injuries are particularly large in and of themselves, they need not be in order to establish Article III standing. Article III standing "requires only an injury, no matter how small." *Halperin v. int'l Web Servs., LLC*, Case No. 13-cv-8573, 2014 U.S. Dist. LEXIS 138600, *7 (N.D. Ill. Sept. 30, 2014) (Feinerman, J.) (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)); *Markadonatos v. Vill. Of Woodridge*, 760 F.3d 545, 552 (7th Cir. 2014) (Posner, J.)); *see also Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010) ("Standing exists when the plaintiff suffers an actual or impending injury, no matter how small[.]"). These injuries are discussed below.[1]

    a. <u>Invasion of Privacy/Nuisance</u>

---

[1] It is true that Plaintiff and putative class members intend to exclusively pursue statutory damages. But Plaintiff's damages theory has no bearing on whether she has suffered injury-in-fact sufficient to establish Article III Standing. *See, e.g. Schumacher v. Credit Prot. Ass'n*, Case No. 13-cv-00164, 2015 U.S. Dist. LEXIS 132752, *16 n.4 (S.D. Ind. Sept. 30, 2015) ("Actual and statutory damages relate to the compensation for an injury, not whether an injury itself has occurred.").

Plaintiff specifically alleges that the text messages were an invasion of privacy and a nuisance. (Am. Compl. ¶ 41(c).) These allegations are sufficient for Article III standing. As discussed, *Spokeo* directed courts, in determining Article III standing questions, to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. As the *Mey* court wrote, and the *Cour* and *Caudill* courts similarly found, "[i]nvasion of privacy is just such an intangible harm[.]" 2016 U.S. Dist. LEXIS 84972 at *8-9. Indeed, the TCPA is explicitly an invasion of privacy statute. The Congressional findings included with the act explain that "[b]anning … automated or prerecorded telephone calls … except when the receiving party consents to receiving the call … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." 105 Stat. 2394, ¶ 10. Indeed, if Article III standing premised on an invasion of privacy could exist in *any* TCPA case, it must be found here. This is not a borderline case where Plaintiff and putative class members received one text message and immediately sued. Instead, they received text messages after *explicitly* asking Defendant to stop.

"Invasion of privacy" was deemed sufficient for Article III standing even before *Spokeo*. In *Schumacher*, the court wrote that the TCPA "creates a privacy right which, when violated, satisfies the standing requirement of the injured party to pursue actual or statutory damages." 2015 U.S. Dist. LEXIS 132752 at *13. The court further found that Cases brought under the TCPA are "are cases brought to enforce the substantive right to privacy the TCPA created and which is violated by unsolicited telephone calls and text messages. *Id.* at *14. *Leung* found similarly, holding plaintiff's allegations of "aggravation … nuisance, and … inva[sion] [of] his privacy" sufficient for

11

standing because such injuries "are among those that count as injuries in fact." 2015 U.S. Dist. LEXIS 176820 at *13.

    b. Lost time

Plaintiff's lost time tending to the unwanted texts is sufficient for Article III standing. "When a defendant's allegedly wrongful conduct costs the plaintiff time, the plaintiff has suffered an injury in fact." *Leung*, 2015 U.S. Dist. LEXIS 176820 at *9 (citing *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011)). Other courts agree. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245, 1251 (11th Cir. 2015); *Martin v. Leading Edge Recovery Sols., LLC*, Case No. 11-cv-5886, 2012 U.S. Dist. LEXIS 112795, *11 (N.D. Ill. Aug. 10, 2012) ("Plaintiffs … were directly injured by defendants' violations of the TCPA because they had to spend time tending to unwanted calls[.]"); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1146 (C.D. Cal. 2012) ("[A] plaintiff suffers … injury sufficient [for] Article III 'standing' where she alleges … 'lost … time … responding to … defendant's wrongful conduct.'").

So well-established is the "lost time" theory of injury that a court can infer lost-time injury from the allegations in a complaint. *Leung*, 2015 U.S. Dist. LEXIS 176820 at *10-11. In *Leung*, also a TCPA case, the plaintiff alleged he received one unsolicited text message and answered one unsolicited call from a delivery service. *Id.* at *2. The court found that these allegations supported "lost-time" injury, even though not outright pled, because plaintiff answered the calls (consuming time in answering) and did not consent to the calls (so he lost time tending to them). *Id.* at *11.

Plaintiff's lost time injuries are explicitly pled here. Plaintiff pleads that she "[l]ost time reading, tending to and responding to the unsolicited texts, and deleting the unwanted texts." (Am. Compl. ¶ 41(b)). Plaintiff specifically alleges that she spent time begging Defendant to stop its text

12

messages on dozens of occasions. (Am. Compl. ¶¶ 5; 24-31). In the Seventh Circuit, before and after *Spokeo*, this is sufficient to establish Article III standing.

c. Device Storage

Plaintiff pleads that the text messages took up storage on her cellular telephone. This is sufficient for Article III standing in and of itself, and because it is closely related to "trespass to chattels." Text messages must be stored on a device in order to be accessed and read.[2] The closest "voice call" analogy would be voicemail. If a TCPA defendant repeatedly left voicemails on a user's device after being asked to stop, there would be no question that the unauthorized use of that plaintiff's device storage would be actual injury.

Here, Plaintiff specifically alleges that the text messages took up space on her device. (Am. Compl., ¶ 41(a).) She writes that text messages, by their very nature, take up storage space on cellular telephones. (*Id.*) As the putative class members are constrained by the same technological limitations as everyone else – that is, their phones use storage for text messages – the text messages necessarily took up space on their devices as well, causing injury-in-fact. (*Id.* at ¶ 54.)

Defendant argues that this injury cannot support a TCPA claim, and cites to *Leung* in support of this position. Regarding "lost data storage capacity," the *Leung* court wrote that plaintiff waived this claim because he failed to defend it in his opposition to defendant's motion to dismiss. *Leung*, 2015 U.S. Dist. LEXIS 176820 at *18. Furthermore, because *Leung* dealt with a call rather than a text, the court wrote that the complaint did not allege "how the call would actually

---

[2] One article estimates that each text message of the type at issue here uses 190 bytes of storage space on a user's device. http://yourbusiness.azcentral.com/much-memory-texting-up-iphone-25023.html

'waste' data storage capacity." *Id.* It is much more obvious how a text takes up storage space. *Leung* nonetheless found Article III standing because of lost time, aggravation, and invasion of privacy.

### III. The TCPA Expressly Authorizes Injunctive Relief

The TCPA expressly authorizes injunctive relief. 47 U.S.C. § 227(b)(3)(A); *see also Ashland Hosp. Corp. v. Service Employees Intern. Union, Dist.*, 708 F.3d 737, 741 (6th Cir. 2013) (holding that the TCPA authorizes "[p]rivate parties … to seek injunctive relief and statutory damages for violations."). Under Illinois law, "where a statute expressly authorizes injunctive relief to enforce the provisions of the statute, the general rules of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury need not be shown." *People v. Fiorini*, 574 N.E. 2d 612, 623 (1991). This has been recognized in federal and state courts alike. *See, e.g.*, *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 740 F.2d 566, 571 (7th Cir. 1984) ("[W]here the plaintiff seeks [a preliminary] injunction to prevent the violation of a … statute that specifically provides for injunctive relief, it need not show irreparable harm"); *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988) ("[A] complainant need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief. All that need to be proved is a violation of the statute."). As the Seventh Circuit has further noted, "[c]ircuit courts have upheld orders granting injunctive relief … when, in an action for a statutory injunction, a violation was demonstrated and there was a reasonable likelihood of future violations." *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 935 (7th Cir. 2008). Furthermore, courts do not need to balance the equities where the defendant's conduct has been willful. *Id.*

Here, Plaintiff pleads enough to infer that there is a reasonable chance that violations will continue or restart. She alleges that she asked Defendant over two dozen times to stop and it did

14

not stop. In addition, Plaintiff has pled enough to infer that Defendant's conduct was willful. Furthermore, Plaintiff pleads a violation of the TCPA, which are the circumstances that trigger her right to injunctive relief. Thus, Plaintiff's claim for injunctive relief should not be dismissed.

**IV.     Plaintiff is Entitled to Attorneys' Fees if She Prevails on Her Class Claim.**

While the TCPA itself does not permit attorneys' fees, Plaintiff's suit is a putative class action suit, and should she succeed, she would be entitled to attorneys' fees under Fed. R. Civ. P. 23(h). Rule 23(h) permits a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law" in a certified class action.

The Supreme Court and the Seventh Circuit have long recognized an exception to the general rule against fee shifting: "[w]here a representative plaintiff successfully establishes or protects a fund in which other class members have a beneficial interest, the costs of litigation may be spread among the fund's beneficiaries." *Spicer v. Chicago Bd. Options Exch.*, 844 F. Supp. 1226, 1249 (N.D. Ill. 1993) (citing *Trustees v. Greenough*, 105 U.S. 527, 532 (1882)). Under this "common fund" doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Thus, attorneys' fees are authorized by law in successful class actions. Because Plaintiff pleads her claims as class claim, her request for attorneys' fees is permissible.[3]

### Conclusion

In light of the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. Plaintiff does not contest dismissal of her claim for declaratory relief.

---

[3] If the Court dismisses Plaintiff's request for attorneys' fees, Plaintiff asks that it be without prejudice to her ability to obtain attorneys' fees under the "common fund doctrine" at a later date.

**Dated:** August 12, 2016                      *s/ Jeremy M. Glapion*
                                                             Jeremy M. Glapion
                                                             **THE GLAPION LAW FIRM, LLC**
                                                             1704 Maxwell Drive
                                                             Wall, New Jersey 07719
                                                             Tel: 732.455.9737
                                                             Fax: 732.709.5150
                                                             jmg@glapionlaw.com