IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTY GRIFFITH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CONTEXTMEDIA, INC. and DOES 1-25<br><br>    Defendants. | Case No. 16-cv-2900<br><br>Hon. Elaine S. Bucklo<br><br>Magistrate Judge<br>Mary M. Rowland |

**REPLY IN SUPPORT OF DEFENDANT CONTEXTMEDIA, INC.'S
MOTION TO DISMISS PURSUANT TO FEDERAL RULES
OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

In her Response, Plaintiff ignores the central theme of *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) applicable to this case: the history of injuries in Anglo/American jurisprudence and Congressional intent with respect to injuries under the TCPA. In addition, she relies heavily on automated telephone call cases to support her claims that her alleged intangible injuries confer standing on her to bring her claims. Unwanted text messages cases, however, are different than automated call cases, both factually and because Congress did not consider unwanted text messages in its consideration of the TCPA and therefore did not elevate the receipt of unwanted text messages to be actionable under Article III. Further, none of the cases decided post-*Spokeo* supports her claims of standing, which ultimately fails under the Spokeo test. Accordingly, this Court should dismiss the Amended Complaint for lack of standing. In addition, the Court should dismiss her claim for injunctive relief and for attorneys' fees.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff complains of receiving text messages allegedly sent by Defendant which were brief suggestions about healthy behavior and do not advertise or sell a product in any way. (FAC ¶¶ 19, 22-23.) Plaintiff initially requested receipt of such text messages, but after about five

months, Plaintiff decided she no longer wanted to receive these text messages and sought to stop them by responding "Stop" for the first time on November 29, 2015. (FAC ¶ 25.) Plaintiff estimates that she received approximately 80 text messages (the "**Text Messages**") that she attributes to Defendant after the first time she responded "Stop" and alleges that the Text Messages were sent using an automatic telephone dialing system. (FAC ¶¶ 31-33.) Plaintiff claims that the Text Messages violate the TCPA. (FAC ¶ 46.)

## *SPOKEO, INC. V. ROBINS*

Plaintiff's counsel is correct in stating that the Supreme Court focused on the "long-established principle that injury-in-fact is one of the three elements required for standing" and focused on the "concreteness" requirement. (Pl. Resp. at 4.) And while the Supreme Court may have "created no new law" in *Spokeo* (*id*. at 5), it rebuked the lower court's practice of ignoring certain aspects of the analysis applicable to whether intangible injuries satisfy the "concreteness" element of the "case or controversy" prong of Article III. Ultimately, the *Spokeo* decision makes it more difficult for plaintiffs to establish standing under statutes like the TCPA.

The *Spokeo* decision can be distilled to fundamental points. First, as simplistic as it sounds, for an injury to be concrete, "it must actually exist." *Id.* at 1548. Second, while the injury must exist, it may be intangible. *Id.* at 1549. Third, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Next, the Supreme Court amplified the historical component of the analysis and stated: "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. (citation omitted). Plaintiff downplays these last two points, but it is this directive that is the most significant in evaluating intangible harm in TCPA cases.

In evaluating standing pre- and post-*Spokeo*, most courts ignore this aspect of the analysis. Those courts that purport to undertake this aspect of the analysis give it short shrift. Plaintiff certainly does in her Response.

In summary, the Supreme Court held in *Spokeo* that in order to determine whether an alleged injury is concrete such that it satisfies the requirements under Article III to bring the claim, a court must find Congressional intent to curb certain behavior and elevate it to a concrete injury and the court must find that the intangible injury is one that has been actionable in English and American courts. *Id.* at 1550. A careful application of this test, however, demonstrates that Plaintiff has not alleged a concrete injury stemming from her receipt of the Text Messages because Congress did not consider the effect of unwanted text messages and because the intangible injuries alleged by Plaintiff are not the type of injuries that are traditionally actionable in English or American courts.

## CONGRESS DID NOT CONSIDER UNWANTED TEXT MESSAGES IN DEBATING THE TCPA

Plaintiff does not address the legislative history of the TCPA because it does not support a claim based on unwanted text messages. As set forth in Defendant's Memorandum in Support of its Motion to Dismiss, the TCPA's legislative history shows that the members of Congress wanted to protect Americans from the constant ringing of the telephone with recorded solicitations, interrupting dinners and other aspects of family life inside a person's home. (Def. Mem. at 4.) For both telephones and fax machines, Congress wanted to stop telemarketers from tying up phone lines, with particular concerns about the potential impact on emergency services. (*Id.* at 4-5.) With respect to only fax machines, Congress intended to protect machine users from the costs and waste associated with paper and ink. (*Id.* at 5.)

It is undisputed that Congress did not consider text messages in its consideration of the TCPA. (*Id.* at 3.) The TCPA's legislative history, however, does reference annoyances in addition to phone calls – viewing television commercials and the receipt of junk mail – but Congress chose not to legislate against those annoyances. 137 Cong. Rec. S18317-01, 1991 WL 250460 (Senator Pressler). As Senator Pressler stated on the record: "[T]he telephone commands our instant attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." *Id.*

The failure of Congress to consider unwanted text messages dooms Plaintiff's claim that receipt of unwanted text messages is the type of intangible harm that Congress elevated to a concrete harm. Even if one attempted to divine Congressional intent regarding unwanted text messages by reviewing the legislative history, it becomes clear that Congress did not intend for unwanted text messages to be actionable. If one compares telephone calls that must be answered and junk mail that can be thrown away, unwanted text messages are substantially more like the latter. Junk mail requires a minimal amount of attention to retrieve it from the mailbox, sort it from the rest of the mail, and dispose of it; unwanted text messages require a similarly minimal amount of attention that is not immediate. Accordingly, the receipt of text messages is not the type of harm Congress intended to render actionable by passing the TCPA.

## POST-*SPOKEO* CASES

Only one case cited by Plaintiff (including in Plaintiff's Notice of Supplemental Authority) that was decided since the *Spokeo* decision deals with allegedly unwanted text messages. *See Cour v. Life360, Inc.,* No. 16-CV-805, 2016 WL 4039279 (N.D. Cal. July 28, 2016). The court in *Cour* cites the *Spokeo* decision, but fails to apply its reasoning in its standing analysis. The decision is also flawed because it does not evaluate Congressional intent regarding

the intangible injury, does not review the historical backdrop of the claim, but relies on cases involving automated telephone calls. *Id.* at *2-3. Ultimately, the court dismissed the complaint on the grounds that the plaintiff initiated the text messages not the defendant. *Id*. at *4.

Every other case cited by Plaintiff addresses automated telephone calls. This is significant because Congress directly considered automated telephone calls in the legislative history of the TCPA. There is an argument that Congress elevated claims based on automated telephone calls to be concrete under Article III, but no argument that it did so regarding unwanted text messages.

The court in *Romero v. Department Stores National Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. August 5, 2016), granted the defendant's motion to dismiss a TCPA claim brought by a plaintiff who received 290 calls from the defendant using an automated telephone dialing system, but answered only three of these calls. The court held that plaintiff must establish standing for each violation and therefore an injury in fact caused by each individual phone call. *Id*. at *2. Further, the court ruled that Congress had not elevated the intangible injury such that it is concrete under Article III. The court distinguished many other cases decided after *Spokeo*, stating:

> Most of these cases consider the calls received by the plaintiff as a whole instead of evaluating standing separately for each call alleged to violate the TCPA. *See, e.g., Caudill v. Wells Fargo Home Mortg., Inc*., No. 16-CV-066, 2016 WL 3820195 (E.D. Ky. July 11, 2016); *Mey v. Got Warranty, Inc*., No. 15-CV-101, 2016 WL 3645195, at *3 (N.D. W. Va. June 30, 2016); *Booth v. Appstack, Inc*., No. 13-CV-1533, 2016 WL 3030256 (W.D. Wash. May 25, 2016). Meanwhile, in another case, the court appeared to hold that a plaintiff who receives a call on his cell phone that violates the TCPA has suffered a concrete injury simply because the call violated the TCPA. *See Rogers v. Capital One Bank (USA), N.A.,* No. 15-CV-4016, 2016 WL 3162592 (N.D. Ga. June 7, 2016). This reasoning is circular. Under *Spokeo,* if the defendant's actions would not have caused a concrete, or *de facto*, injury in the absence of a statute, the existence of the statute does not automatically give a Plaintiff standing. *See Spokeo*, 136 S.Ct. at 1547-48 ("Congress cannot erase Article III's standing requirements by statutorily granting

> the right to sue to a plaintiff who would not otherwise have standing.") (citation omitted) . . . . [T]he mere dialing of a cellular telephone number using an ATDS, even if the call is not heard or answered by the recipient, does not cause an injury to the recipient. That the TCPA allows private suits for such calls does not somehow elevate this non-injury into a concrete injury sufficient to create Article III standing.

*Romero,* 2016 WL 4184099, at *5. The court held that the alleged concrete harm was divorced from the alleged violation of the TCPA. *Id.* "Accordingly, Plaintiff has not and cannot satisfy the injury-in-fact requirement of Article III." *Id.*

Plaintiff's attempts to distinguish this case fails on two grounds. First, Plaintiff argues that the court in Romero "acknowledges injury caused by the calls but for some reason rejects those injuries." (Pl. Supp. Resp. at 5.) The court identified the alleged injury, but then clearly stated that the alleged injury is not concrete. *Romero*, 2016 WL 4184099, at *5. Second, Plaintiff's claim that the court incorrectly applied the no reasonable juror standard is misplaced. (Pl. Supp. Resp. at 5.) The court determined as an initial matter that a phone call that was placed but which the recipient did not answer cannot cause any harm; the standard was correctly applied because discovery had closed and other motions for summary judgment had been decided. *Romero*, 2016 WL 4184099, at *1, 4. Further, the court determined that none of the alleged intangible injuries was concrete. *Id*. at *5

Another case cited by Plaintiff that has some application to this case is the *Sartin v. EKF Diagnostics, Inc.*, No. 16-CV-1816, 2016 WL 3598297 (E.D. La. July 5, 2016). The *Sartin* case, like many of the cases discussed below, fails to perform "the history and judgment of Congress" test directed by the *Spokeo* decision, but it properly focuses on the failure of the plaintiff to allege any facts in its claim of injury. *Id*. at *3-4. It quotes *Brown v. F.B.I.*, 793 F. Supp. 2d 368, 374 (D.D.C. 2011): "[N]ondescript and conclusory allegations of injury, however, are not the type of general factual allegations from which the Court may presume the specific facts

necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Sartin*, 2016 WL 3598297, at *3. This statement is applicable to Plaintiff's allegations of injury in this case.

Of the post-*Spokeo* cases, Plaintiff relies heavily on the decision in *Mey*. In that case, the court applies both the Congressional intent of the TCPA and historical context of the alleged intangible injuries. The *Mey* case, however, is distinguishable for important reasons. First, it concerns automated telephone calls. Second, it canvasses many decisions regarding non-telephone call cases that were decided before the *Spokeo* decision and have no application here. *Id*. at *5-6. The *Mey* case simply does not apply to this case.

The remainder of the post-*Spokeo* cases cited by Plaintiff are extremely inconsistent in their application of the *Spokeo* test. These automated telephone call cases include *A.D. v. Credit One Bank, N.A.*, No. 14-CV 10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016) (makes only passing reference to the "history and the judgment of Congress" test); *Booth* (ignores both Congressional intent and the historical roots of the intangible injury); *Rogers* (same); *Caudill* (analyzing Congressional intent but not the nature of the intangible injury); *Ung v. Universal Acceptance Corp.*, No. 15-CV-127, 2016 WL 4132244 (D. Minn. Aug. 3, 2016) (ignores both Congressional intent and the historical roots of the intangible injury, but relies on *Booth*, *Rogers* and *Caudill* to find standing); *Krakauer v. Dish Network*, No. 14-CV-333, 2016 U.S. Dist. LEXIS 111090 (M.D.N.C. Aug. 5, 2016) (ignores both Congressional intent and the historical roots of the intangible injury); *Garrett v. SCANA Energy Mktg., Inc*., No. 15-CV-3881[1] (N.D.

---

[1] This cases is unavailable on Westlaw and Lexis, and no hyperlink is available. Plaintiff provided this opinion to the Court in her Notice of Supplemental Authority.

Ga. Aug. 10, 2016) (ignores both Congressional intent and the historical roots of the intangible injury).[2]

## THE INJURIES ALLEGED BY PLAINTIFF ARE NOT CONCRETE

ESTABLISHING STANDING FOR EACH ALLEGED INTANGIBLE INJURY

Plaintiff's purported injuries are: (i) that the Text Messages "necessarily take up storage space on cellular phones;" (ii) lost time reading, addressing and deleting Text Messages; and (iii) an unspecified "invasion of privacy." (FAC ¶ 41.) None of these alleged injuries is concrete. First, none of the alleges injuries is tangible. *See, e.g., Mey*, 2016 WL 3645195, at *3. As the Supreme Court directed in *Spokeo*, an intangible harm may still be concrete if Congress has identified the intangible harm. Second, the legislative history shows these were not injuries that Congress considered or addressed when enacting the TCPA. (Def. Mem. at 3-5.) Even if Congress had considered the issue of unwanted text messages, the intangible injuries alleged by Plaintiff are not the type of alleged injuries that are traditionally actionable in English or American courts.

INVASION OF PRIVACY

Plaintiff includes a generic allegation that the Text Messages are "both a nuisance and an invasion of [her] privacy." (FAC ¶ 41(c).) That is the entire allegation without any supporting facts. Plaintiff claims such bare allegations are sufficient for Article III standing, but relies only on automated telephone call cases for support; some of these cases were decided before *Spokeo*. Moreover, Plaintiff fails to apply the *Spokeo* decision to her claim of standing. The *Spokeo*

---

[2] Two other cases submitted by Plaintiff have no application to this case. The case *Tel Sci. Corp. v. Asset Recovery Solutions*, No. 15-CV-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) did not involve a standing challenge under Spokeo and the case *Prindle v. Carrington Mortg. Servs., LLC*, No. 13-CV-1349, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016) involves the Fair Debt Collection Practices Act.

analysis demonstrates, however, that Plaintiff does not have standing to assert a claim for invasion of privacy regarding the Text Messages.

Invasion of privacy is a cause of action well known to English and American courts, and it is an injury frequently cited in TCPA cases. This is likely because the Congressional Record is filled with examples of how automated *telephone calls* have invaded the privacy of Americans because the telephone calls are highly offensive to an average person. There is no legislative history, however, regarding unwanted text messages.

Applying the history component of the *Spokeo* test, "[t]he invasion of privacy claim that is most analogous here is the invasion of seclusion." *Mey*, at 9. According to the Illinois Supreme Court, the tort of the invasion of seclusion is defined as: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Lawlor v. North Am. Corp. of Illinois*, 983 N.E.2d 414, 425 (Ill. 2012) (quoting Restatement (Second) of Torts § 652B, at 378 (1977)). In her Amended Complaint, Plaintiff makes only the bare allegation that the receipt of the Text Messages invaded her privacy. She does not allege that the receipt of the Text Messages was "highly offensive to a reasonable person." In reality, it would strain credulity for Plaintiff to make this allegation because she would have to claim that receiving the health tip of the day (the same tip of the day that she signed up for and received for 5 months) after she first texted "STOP" was highly offensive to a reasonable person. Because Plaintiff has failed to make this allegation, she cannot sustain a claim of invasion of privacy. And without a proper claim of invasion of privacy, her intangible injury is not concrete under Article III.

LOST TIME

Plaintiff claims that she "[l]ost time reading, tending to and responding to the unsolicited texts, and deleting the unwanted texts." (FAC ¶ 41(b).) She also claims this is sufficient to establish standing, but only relies on pre-*Spokeo* automated telephone call cases to support her claims. (Pl. Resp. at 12.) The unspecified loss of time with respect to reading, responding and deleting texts, however, is an intangible injury that is not concrete sufficient to confer federal jurisdiction. There is no cause of action in Anglo-American jurisprudence that is "closely related" to lost time. One might argue that "lost time" is simply an aspect of a claim for invasion of privacy, but that claim fails here too for the reasons discussed above.

DEVICE STORAGE

Plaintiff vaguely alleges that "[t]ext messages necessarily take up storage space on cellular telephones." (FAC ¶ 41(a).) To support her claim of standing, she argues that text messages are analogous to voicemails. (Pl. Resp. at 13.) She cites no cases to support this point or that voicemails are actionable under the TCPA. In addition, as with each claim of intangible injury, Plaintiff fails to apply the *Spokeo* test.

Although there is no corresponding cause of action traditionally redressed in English or American Courts, some courts that have considered the storage space argument have attributed this alleged intangible injury to the tort of trespass to chattel. *See, e.g. Mey*, at *4. This comparison is erroneous. First, this cause of action is "little-used" and there is "no recognized cause of action in Illinois for a trespass to chattel claim based on trespass to an intangible . . . ." *See Ogbolumani v. Young*, No. 1-14-1930, 2015 Ill. App. 141930-U, at *5 (1st. Dist. March 20, 2015). Second, there are no allegations in the First Amended Complaint that set out the elements of a claim for trespass to chattel. All that Plaintiff says about this intangible injury is that the

Text Messages "[took] up storage space on cellular telephones." (FAC ¶ 41(a).) Plaintiff does not explain how they do and did not even allege that they took up any particular space on her phone. There is not an allegation of damage to Plaintiff's cell phone, any permanent or even long-lasting deprivation of the storage or the use of the device, or any lost data.

According to the Restatement (Second of Torts), "[a] trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Section 217. "A dispossession may be committed by intentionally (a) taking a chattel from the possession of another without the other's consent, or (b) obtaining possession of a chattel from another by fraud or duress, or (c) barring the possessor's access to a chattel, or (d) destroying a chattel while it is in another's possession, or (e) taking the chattel into the custody of the law." *Id*. § 221. None of these factors applies to this alleged intangible injury. To properly state a claim for trespass to chattel (if it is a cognizable claim at all), a plaintiff must not only allege a dispossession of the property, but a harm which resulted to the dispossession. *See Ogbolumani,* 2015 Ill. App. 141930-U , at *9; *Intel Corp. v. Hamadi*, 71 P.3d 296, 302 (Cal. 2003) (stating that the owner of the property "may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use"). In this case, Plaintiff's temporary loss of storage resulting from the Text Messages is not a dispossession of the storage or a harm to her cell phone. Accordingly, the tort of trespass to chattel does not support a claim of concreteness sufficient to convey Article III standing for this intangible injury.

## PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

Although Plaintiff has dropped her request for declaratory relief (Pl. Resp. at 15), she persists in her claim for injunctive relief. Even if she has standing to pursue her claims, Plaintiff

is not entitled to injunctive relief. To support her request, she claims that she has pled enough to infer there is a reasonable chance that violations will continue or restart. (*Id*. at 14.) As an initial matter, Plaintiff does not allege that she continued to receive text messages after the filing of her initial complaint. As a result, she has no basis to allege that any other putative class member received text messages after the filing of the initial complaint. What Plaintiff does allege is that her claim has already accrued and that she is entitled to a damages remedy. Because there is an adequate remedy at law, Plaintiff is not entitled to injunctive relief. *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432 (7th Cir. 1991). For this reason, Plaintiff's prayer injunctive relief should be dismissed.

### PLAINTIFF HAS NO LEGAL BASIS TO BE AWARDED ATTORNEYS' FEES IN ADDITION TO AN AWARD OF ACTUAL AND STATUTORY DAMAGES.

The only argument advanced by Plaintiff in support of her request for attorney's fees is the "common fund" doctrine. (Pl. Resp. at 15.) The Seventh Circuit, however, clearly stated that TCPA cases are not "common fund" cases. *Holtzman v. Turza*, Nos. 15–2164 & 15–2256, 2016 WL 3648390 at *1 (7th Cir. July 8, 2016) (stating the "common fund" doctrine does not apply to TCPA cases because "suits under the Telephone Consumer Protection Act seek recovery for discrete wrongs to the recipients") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 263–67 & n. 39, (1975); *Snyder v. Harris*, 394 U.S. 332 (1969); *Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012)). This Court, therefore, cannot award attorneys' fees in addition to an award of actual and statutory damages on the basis of the "common fund" doctrine, and Plaintiff's request for attorneys' fees should be dismissed. *See, e.g., Klein v. Vision Lab Telecomm., Inc.*, 399 F. Supp. 2d 528, 542 (S.D.N.Y. 2005) (granting a motion to dismiss the claim for attorney's fees under the TCPA).

## CONCLUSION

In light of *Spokeo* and other case law, this Court lacks Article III jurisdiction over this case, and it should be dismissed in its entirety. In the alternative, Plaintiff's requested relief for injunctive relief and an award of attorneys' fees in addition to actual and statutory damages should be dismissed.

**Dated:** August 26, 2016 Respectfully submitted,

/s/ Bevin Brennan

Bevin Brennan (#6271982)
Kevin D. Finger (#6216060)
Olesya A. Salnikova (#6313887)
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601

*Counsel for Defendant ContextMedia, Inc.*