UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTY GRIFFITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CONTEXTMEDIA HEALTH, LLC d/b/a OUTCOME HEALTH**<br><br>Defendant. | Civil Case No.: 16-2900<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff Christy Griffith ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant ContextMedia Health, LLC's ("ContextMedia" or "Defendant") practice of sending autodialed text messages to cellular telephones without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2. The TCPA is a codification of a type of invasion of privacy. As Congress wrote in the Congressional findings in the TCPA, "[e]vidence compiled by the Congress indicates that … telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." 47 U.S.C. 227, Congressional Findings ¶ 10.

3. In or about July 2015, Plaintiff subscribed to Defendant's "CMH Nutrition Tips" service, through which Defendant would send to Plaintiff's cellular telephone an automated text message containing a nutrition tip each day.

4. On or before November 29, 2015, Plaintiff replied "STOP" to one of these text messages, which was the method stated in text message for opting out of further text messages.

1

5. Since that date, and despite no less than 25 attempts to opt out of the text messages using "STOP", variations on the word "STOP," and some particularly clever "STOP" puns, the text messages have continued on a near-daily basis.

6. While Plaintiff had initially consented to receipt of these messages, she subsequently revoked her consent using the method Defendant provided to opt out.

7. Under the TCPA, consumers are permitted to revoke prior express consent to receive text messages. *See, e.g. SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (confirming that an entity may only send an opt-out confirmation text after the consumer has revoked his or her consent to receive further text messages); *Gonnella v. Delbert Servs. Corp.*, Case No. 14-cv-4921, 2015 U.S. Dist. LEXIS 34465, *9-11 (N.D. Ill. Mar. 19, 2015).

8. Accordingly, Defendant's post-"stop" text messages were sent without prior express consent, and thus violated the TCPA.

9. Upon information and belief, Defendant has made and continues to send similar text messages to cellular telephones nationwide after the recipients have replied "STOP" to one of Defendant's messages.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it resides in this district.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is also proper because Defendant resides in this district.

**PARTIES**

12. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of North Carolina.

13. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

14. Defendant ContextMedia Health, LLC is and at all times mentioned herein was, a corporation duly organized under the laws of the State of Illinois with its headquarters in Chicago, Illinois.

15. Defendant ContextMedia Health, LLC is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

16. Does 1-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

**FACTUAL ALLEGATIONS**

17. In approximately July 2015, Plaintiff, upon prompting from a program playing in the waiting room of a doctor's office, opted in to receiving autodialed text messages containing nutrition tips from Defendant's SMS "Short Code"[1] number 50101 to her cellular telephone number 919-###-9578.

18. At the time, Defendant used short code 50101 in conjunction with its brand "Diabetes Health Network."

19. Immediately after opting in, Plaintiff began receiving text messages from

---

[1] A "short code" is essentially a shortened telephone number, primarily used for sending and receiving SMS and MMS messages. Short codes are often, if not exclusively, used with automated messaging.

3

Defendant's Short Code number 50101 in the following form:

> CMH TIPS: Eat a healthy breakfast, and smaller meals throughout the day. This will help keep your energy up and your metabolism going.

\* \* \*

> CMH TIPS: Plate your food! When you portion food onto a plate & put the bag away before eating, it is much easier not to overeat.

20. None of the text messages from 50101 contained any instructions on how to stop the texts.

21. At some point in or about August 2015, the text messages from 50101 ceased, but Plaintiff immediately began receiving text messages identical in form and substantially similar in content from SMS Short Code 21831.

22. These text messages included, for example:

> CMH TIPS: Did you know that mushrooms are the only source of vitamin D in the produce aisle?

\* \* \*

> CMH TIPS: Is it hunger? If you are craving a chocolate bar and a healthier snack does not appeal, you are probably not truly hungry.

23. While most of these initial text messages did not contain any instructions on how to opt out, eventually the content of the message changed slightly to the following form:

> CMH TIPS: If you live in a cold climate, still exercise! Walk around the mall or workout in your living room to get your heart pumping. To opt-out, reply STOP

\* \* \*

> CMH TIPS: Try swapping potatoes for cauliflower for a low-carb meal. Mash them, broil them, or make a cauliflower "potato" salad. To opt-out, reply STOP

24. No longer wishing to receive these texts, Plaintiff replied "STOP" on multiple

occasions, but the texts did not stop.

25. For example, in 2015, on November 29, December 23, December 24, December 27, December 28, December 29, among other dates, Plaintiff replied "STOP" in response to Defendant's messages, but the messages continued.

26. In 2016, Plaintiff replied "STOP" on January 1, January 2, January 3, January 5, January 23 (five times), February 4, and February 5.

27. In an attempt to keep in good humor over these texts, Plaintiff also texted responses such as "If you don't STOP, the terrorists win" (January 13), and, in response to a text beginning "CMH TIPS: Love Lattes?", Plaintiff wrote "I'd love it a latte if you'd STOP."

28. On February 16, Plaintiff wrote: "For the record, I am opting out every time I reply stop."

29. There are multiple other instances as well, including some demonstrating Plaintiff's growing annoyance and frustration with these messages, such as "STOP STOP STOP FOR THE LOVE OF GOD STOP" (January 10).

30. Defendant did not respond to any of these opt-out requests, except to send more of the very texts Plaintiff attempted to stop.

31. Plaintiff estimates that she received at least 80 text messages from Defendant after the first time she asked Defendant to "STOP."

32. These text messages were all sent using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders.

33. That the text messages were sent using an automatic telephone dialing system is evidenced by, *inter alia*:

    a) The frequency, persistence, and regularity of the messages;

5

b) The near-identical form and substantially similar content of the messages;

c) The fact that the messages came from a "short code," which, upon information and belief, cannot be assigned to a standard telephone;

d) The traditional and near-exclusive use of "short codes" to send automated messages;

e) The lack of any response (other than continued "CMH TIPS" messages) in response to Plaintiff's "STOP" requests;

f) The lack of any human response to Plaintiff's "STOP" requests;

g) The purportedly automated "opt out" process meant to be triggered by the word "STOP";

h) The opt-in process, which began the text messages automatically in response to a consumer's request.

34. Text messages are considered "calls" under the TCPA. *See, e.g.* 2003 FCC Order, 18 FCC Rcd. 14014, ¶ 165; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1003 (N.D. Ill. 2010).

35. While Defendant initially had consent to send the "CMH TIPS" text messages to Plaintiff's cellular telephone, Plaintiff revoked this consent on numerous occasions.

36. It has long been held that a consumer can revoke his or her consent to receive text messages – especially if the opt-out is done in writing such as through a responsive text message. *See, e.g. SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (confirming that an entity may only send an opt-out confirmation text after the consumer has revoked his or her consent to receive further text messages); *Gonnella v. Delbert Servs. Corp.*, Case No. 14-cv-4921, 2015 U.S. Dist. LEXIS 34465, *9-11 (N.D. Ill. Mar. 19, 2015).

37. Accordingly, as of no later than November 29, 2015, Defendant did not have consent to send automated text messages to Plaintiff's cellular telephone.

38. Nonetheless, Defendant continued to send automated text messages to Plaintiff's cellular telephone.

39. The text messages were not sent for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Accordingly, Defendant ContextMedia's text messages to Plaintiff after Plaintiff sent a "STOP" text message violated the TCPA.

41. Plaintiff has suffered injury-in-fact as a result of Defendant's telephone calls, including, but not limited to:

   a) Device storage. Text messages necessarily take up storage space on cellular telephones and because Defendant's text messages did so without prior express consent, they constitute concrete injury;

   b) Lost time reading, tending to and responding to the unsolicited texts, and deleting the unwanted texts. The time spent reading, addressing, and deleting unsolicited text messages is concrete injury;

   c) Invasion of Privacy. Defendant's continued contact after asking Defendant to stop contact is both a nuisance and an invasion of Plaintiff's privacy, and constitutes concrete injury. This can be seen, for example, in Plaintiff's frustrated January 10, 2016 text message.

42. These injuries are both particularized (in that they each affect plaintiff in a personal and individual way) and concrete (in that the above harm actually exists).

43. Upon information and belief, Defendant ContextMedia has sent similar messages

to individuals' cellular telephones nationwide after receiving a "STOP" request.

44. Plaintiff and the Class members are entitled to at least $500 per text message after sending a "STOP" message.

45. Plaintiff and the Class members are entitled to $1,500 per text message after sending a "STOP" message if Defendant's behavior was willful or knowing.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant ContextMedia Health, LLC sent, in the past four years, a text message, other than an opt-out confirmation text message, using an automatic telephone dialing system, after Defendant's records, or the records of any entity with whom Defendant contracted to provide text messaging services, indicate Defendant or that entity received a text message containing the word "STOP" from that cellular telephone number.

("Class")

47. Excluded from this class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

48. The Class members for whose benefit this action are brought are so numerous that joinder of all members is impracticable.

49. The exact number and identities of the persons who fit within the class are ascertainable in that Defendant ContextMedia maintains written and electronically stored data showing:

    a. The time period(s) during which Defendant ContextMedia sent its text

messages;

    b.    The telephone numbers to which Defendant ContextMedia sent its text messages;

    c.    The telephone numbers which sent a "STOP" text message to Defendant;

    d.    The telephone numbers to which a text message was sent after Defendant received a "STOP" text message from that telephone number. sending a "STOP" text message.

50.    The Class is comprised of hundreds, if not thousands, of individuals nationwide.

51.    There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

    a.    Whether Defendant ContextMedia used an automatic dialing system in placing its calls;

    b.    Whether Defendant ContextMedia took adequate steps to acquire and/or track consent;

    c.    Whether and to what extent Defendant ContextMedia honored "STOP" requests from text message recipients;

    d.    Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and

    e.    Whether Defendant should be enjoined from engaging in such conduct in the future.

52.    Plaintiff is a member of the Class in that she received text messages from Defendant ContextMedia after she sent the text "STOP."

53.    The claims of Plaintiff are typical of the Class members in that they arise from

Defendant's uniform conduct and are based on the same legal theories of all Class members.

54. Plaintiff and all putative Class members have also necessarily suffered concrete injury, as, by virtue of the class definition being restricted to those who received text messages after asking Defendant to "stop", all Class members spent time tending to Defendant's unwanted text messages, lost storage space as a result of Defendant's text messages, and suffered both a nuisance and invasion of privacy.

55. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

56. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

57. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class as a whole.

58. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

59. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

60. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227**
(On Behalf of Plaintiff and the Class)

61. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62. Defendant ContextMedia sent text messages to the cellular telephone numbers belonging to Plaintiff and the other members of the Class.

63. These text messages were sent after Plaintiff and Class members sought to opt out of further text messages by sending a "STOP" text message.

64. These text messages were all sent using equipment that had the capacity to store telephone numbers to be called or messaged, using a random or sequential number generator, and/or without human intervention.

65. The post-STOP text messages were all sent without the prior express consent of Plaintiff and the other members of the putative Class.

66. Defendant ContextMedia has therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).

67. As a result of Defendant's unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation.

68. Should the Court determine that Defendant's conduct was willful and/or knowing, Plaintiff and each member of the class are entitled to treble damages in the amount of $1,500 per call, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christy Griffith, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff Christy Griffith as the representative of the Class, and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the

11

wrongful and unlawful acts described herein;

      D.      An award of actual and statutory damages;

      E.      An award of reasonable attorneys' fees and costs; and

      F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** July 17, 2017           */s/ Jeremy M. Glapion*_____
                                                        Jeremy M. Glapion
                                                        **THE GLAPION LAW FIRM, LLC**
                                                        1704 Maxwell Drive
                                                        Wall, New Jersey 07719
                                                        Tel: 732.455.9737
                                                        Fax: 732.709.5150
                                                        jmg@glapionlaw.com