UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTY GRIFFITH**, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>**CONTEXTMEDIA HEALTH, LLC d/b/a OUTCOME HEALTH**<br><br>                Defendant. | Civil Case No.: 16-2900<br><br>District Judge: Hon. Elaine S. Bucklo<br>Magistrate Judge: Hon. Mary M. Rowland |

**Plaintiff's Amended Memorandum in Support of Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(3).**

## INTRODUCTION

This putative class action arises from Defendant ContextMedia Health, LLC's (d/b/a Outcome Health) practice of sending automated text messages to cellular telephones after recipients asked Defendant, in writing, to stop sending such text messages. In doing so, Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* Plaintiff now moves to certify a class, defined more specifically below, of all persons who asked Defendant to stop sending text messages, and to whom Defendant continued to send texts after that point.

## BACKGROUND

On March 7, 2016, Plaintiff filed the instant putative class action (followed by an Amended Complaint on June 9, 2016 and a Second Amended Complaint on July 26, 2017), alleging that, on more than two dozen occasions, she replied to one of Defendant's automated daily "Nutrition Tips" text messages with "stop," as instructed by several of the text messages themselves. (Second Am. Compl., Dkt. 59, ¶¶ 23-24.) Despite these revocations of consent, the text messages continued. Plaintiff was sent more than 80 text messages after the first time she revoked consent.

Plaintiff is not alone. Discovery has shown more than 2,200 other people revoked consent in one of the two manners Defendant expressly provided: by texting "stop" or "stop cmh tips" to its telephone number. (Exhibit A.) These class members were cumulatively sent approximately 128,000 text messages after they texted "stop" or "stop cmh tips".

Under both Seventh Circuit precedent and FCC orders, call recipients are permitted to revoke their consent in any reasonable manner. *See, e.g.*, *Sengenberger v. Credit Control Servs.*, Case No. 09-cv-2796, 2010 U.S. Dist. LEXIS 43874, *10-12 (N.D. Ill. May 5, 2010) (finding that calls made after a TCPA plaintiff revoked his consent were actionable); *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 977 (W.D. Wisc. 2013) ("I . . . conclude that consumers have

the right to revoke consent to receive autodialed calls under the [TCPA]."); 2015 TCPA Order, 30 FCC Rcd. 7961, 7989-900 ¶ 47 (2015) ("[A] called party may revoke consent at any time and through any reasonable means."). Plaintiff and the proposed class members here not only revoked consent in a reasonable manner, but in the manners Defendant expressly provided.

Accordingly, Plaintiff now moves for an order, pursuant to the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, certifying a class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant ContextMedia Health, LLC sent, between July 28, 2015 and March 31, 2016, a text message, other than an opt-out confirmation text message, as part of its "Healthy Tips" campaign, after Defendant's records or the records of any entity with whom Defendant contracted to provide text messaging services, indicate that the telephone number to which the text messages were sent had previously sent a text message with the single word "STOP" or the single phrase "STOP CMH TIPS", regardless of capitalization.

("Class").

## **LEGAL STANDARD**

Rule 23 contains two sets of requirements which must be met for a class to be certified under Fed. R. Civ. P. 23(b)(3). First, there are the basic requirements that must be met in all cases: (1) numerosity, which requires the class to be "so numerous that joinder of all members is impracticable;" (2) commonality, which requires "questions of law or fact common to the class;" (3) typicality, which requires "the claims or defenses of the representatives party [to be] typical of the claims or defenses of the class;" and finally, (4) adequacy, which requires a showing that "the representative parties will fairly and adequately represent the class." Fed. R. Civ. P. 23(a)(1-4).

Second, for cases brought pursuant to Rule 23(b)(3), a plaintiff must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are commonly known as

2

"predominance" and "superiority," respectively. *See e.g.*, *Vill. Of Bedford Park v. Expedia, Inc. (WA)*, 309 F.R.D. 442, 446, 452 (N.D. Ill. 2015). The movant "bears the burden of showing, by a preponderance of the evidence, that a proposed class meets the requirements of Federal Rule of Civil Procedure 23." *Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016). In the TCPA context, class certification under Rule 23(b)(3) is the norm, rather than the exception. *See, e.g. Chapman v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 U.S. Dist. LEXIS 16866, *9, *55 n.11 (N.D. Ill. Feb. 11, 2014) (collecting cases); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

## DISCUSSION

**A.     Rule 23's Requirements**

    **i.     Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." While there is no minimum number of members needed for a suit to proceed as a class action, 40 members is generally believed to be sufficient. *Bailiff v. Vill. Of Downers Grove*, Case No. 11-cv-3335, 2011 U.S. Dist. LEXIS 145391, *7 (N.D. Ill. Dec. 16, 2011). Courts are also "entitled to make common sense assumptions in order to support a finding of numerosity." *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 662 (N.D. Ill. 1996).

Here, documents produced in discovery show that Defendant continued to send text messages to 2,239 persons after the first time those persons texted "stop" or "stop CMH tips" to Defendant in accordance with Defendant's instructions. (Exhibit B.)[1] This excludes persons who

---

[1] Exhibit B is a list of partial phone numbers which had sent "stop" or "stop cmh tips" (column A) and the number of text messages sent to those numbers after that point, excluding opt-out confirmation messages (column B.) The parties possess the full ten-digit phone numbers for the numbers in column A; the last four digits were removed from this exhibit strictly to protect the privacy of putative class members.

3

were only sent opt-out confirmation texts after their revocation.[2] These 2,239 persons were sent more than 128,000 text messages after saying "stop" or "stop CMH tips". Numerosity is therefore met. *See, e.g.*, *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (finding numerosity met where the court could reasonably infer that hundreds of persons were included in the proposed class).

      ii.    **Rule 23(a)(2): Commonality**

Rule 23(a)(2) requires questions of law or fact common to the Class. To meet the commonality requirement, establishing "even a single common question" is sufficient. *See, e.g.*, *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)); *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1019 (N.D. Ill. 2016) (same); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014 (same). "[T]he key to commonality is whether a class-wide proceeding can generate *answers* apt to drive the resolution of the litigation." *Parish v. Sheriff of Cook Cnty.*, Case No. 07-C-4369, 2016 U.S. Dist. LEXIS 43108, *18 (N.D. Ill. Mar. 31, 2016).

Here, *all* of the questions in this litigation are common to the Class. They include, but are not limited to: a) whether texting "stop" or "stop cmh tips" in response to one of Defendant's text messages is sufficient revocation of consent; b) whether the equipment Defendant used to send these texts qualifies as an "automatic telephone dialing system"; and c) whether Defendant sent texts to Class members after Class members revoked consent. Answers to these questions will necessarily drive the resolution of the litigation on a class-wide basis, as each question is a core

---

[2] Opt-out confirmation texts are the texts that were sent to a subscriber 1) when that subscriber "successfully" opted out and 2) in response to the subscriber's solicited feedback on why they opted out, if that feedback was given.

element of a TCPA claim of the type at issue here. Accordingly, the commonality requirement is met.

### iii. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the Class. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley—Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* "Typicality does not require identical claims; 'factual variations among class members' grievances do not defeat a class action.'" *Magee v. Portfolio Recovery Assocs., LLC*, Case No. 12-cv-1624, 2015 U.S. Dist. LEXIS 14899, *9 (N.D. Ill. Feb. 5, 2015) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Instead, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595.

Here, Plaintiff's claims arise from the exact same relevant legal and factual circumstances as those of the Class and are based on the same legal theory. Defendant continued to send "Healthy Tips" text messages to Plaintiff after Plaintiff revoked her consent for such text messages by saying "stop". (Exhibit A.)[3] Plaintiff was sent 83 text messages after this point. (Exhibit B, Row 2030.) While Plaintiff said "stop" and other persons in the Class said "stop cmh tips", such factual differences do not defeat typicality, as Plaintiff's claims and the Class claims are both based on

---

[3] Exhibit A shows some of the occasions on which Plaintiff sent a "stop" text message, but does not show the first time or every time she did so.

5

the theory Defendant violated the TCPA by sending autodialed text messages after Class members revoked consent.

Plaintiff is also not subject to any unique defenses. Any defense relating to the nature of the text messages, the systems used to send the text messages, or the validity of "stop" or "stop cmh tips" as adequate revocation are potentially applicable to the whole Class, not just Plaintiff.

Finally, Plaintiff's interests in recovering damages for Defendant's unsolicited text messaging campaign are directly aligned with each member of the putative Class. Plaintiff seeks statutory damages only on behalf of herself and the putative Class. As someone who was sent more text messages than the average Class member, Plaintiff is very inclined and driven to seek meaningful relief per text message, as provided by the statute.

### iv. Adequacy

Rule 23(a)(3) requires the representative parties to fairly and adequately protect the interests of the Class. This inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26. This requirement tends to merge with the commonality and typicality inquiries, "which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626, n.20 (quotations and citations omitted). In determining the adequacy of representation, the Court must consider "(1) the adequacy of the named plaintiff's counsel" and "(2) the adequacy of representation provided in protecting the different, separate, and distinct

interest[s] of the class members." *Kasten v. St.-Gobain Perf. Plastics Corp.*, 556 F. Supp. 2d 941, 959-60 (W.D. Wisc. 2008).

The adequacy requirement is met here. Plaintiff's claims involve the exact same underlying conduct affecting all members of the proposed Class. Indeed, the claims are so identical, and the statute so clear, that the actions Plaintiff would need to take and arguments she would need to make to prosecute her action individually would necessarily serve to advance the cases of all absent Class members. For example, a decision on whether "stop" and "stop cmh tips" constitute adequate revocation, whether post-revocation text messages violate the TCPA, or on whether the equipment Defendant uses qualifies as an automatic telephone dialing system, would advance the claims of all Class members. Plaintiff's interests align completely with members of the Class.

Plaintiff has also remained diligent and involved throughout this litigation. Plaintiff and her counsel are in frequent communication about all aspects of the case. Plaintiff has timely responded to Defendant's discovery requests. Plaintiff also traveled from her home in North Carolina to Chicago for Defendant's deposition on the first date and time Defendant requested. Plaintiff has fulfilled, and will continue to fulfill, her duties as representative of the Class.

Plaintiff's counsel also satisfies the adequacy requirement.[4] Attorney Glapion has extensive experience litigating TCPA matters individually and on a class-wide basis. Since founding The Glapion Law Firm in May 2015, Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA case in which the court approved an $8.5 million non-reversionary class action settlement, which was successfully administered. Attorney Glapion has also recently been appointed as sole

---

[4] Defendant has previously attacked Attorney Glapion's adequacy because of a loan Attorney Glapion previously took which called for a repayment schedule tied to his future earnings. This argument is unsupported; further, this loan was paid back in full on November 16, 2016.

lead counsel in *Allard et al. v. SCI Direct, Inc.*, a TCPA class action pending in the Middle District of Tennessee. Case No. 16-cv-01033 (M.D. Tenn. 2016). Attorney Glapion has also recovered over $1 million for clients in dozens of individual TCPA cases. While class actions are procedurally more complex, Attorney Glapion's familiarity with the underlying law has and will continue to serve the Class well. *See* Declaration of Jeremy M. Glapion.

Likewise, Tycko & Zavareei, LLP is a national, plaintiff-side, consumer protection and *qui tam* firm based in Washington, D.C., and has been appointed class counsel in numerous consumer protection class actions across the country. Tycko & Zavareei's attorneys in Washington and in Oakland, CA have extensive experience and knowledge of the TCPA, and practical experience bringing class action cases to trial in federal court. *See generally* Law Firm Resume of Tycko & Zavareei, LLP (attached as Exhibit 1 to the Declaration of Kristen Law Sagafi). Tycko & Zavareei LLP has never been found to be not adequate class counsel. To the contrary, Tycko & Zavareei LLP has been found to be adequate and has been appointed class counsel and/or settlement class counsel in dozens of cases. *See id.* Specifically, Attorney Sagafi has represented plaintiffs in consumer class actions for 15 years, successfully litigating on behalf of certified classes in more than a dozen cases. *See* Declaration of Kristen Law Sagafi.

Plaintiff's counsel also has devoted, will continue to devote, and has available the resources necessary to successfully litigate this matter on behalf of the Class, should it be certified.

    **v.**    **Rule 23(b)(3): Predominance**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." This "requirement is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication. *Messner v. Northshore Univ. HealthSystem*,

F.3d 802, 815 (7th Cir. 2012) (quotation omitted). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Haliburton Co.*, 131 S. Ct. 2179, 2184 (2011). *Amchem Prods.*, 521 U.S. at 623 (1997).

To succeed on a TCPA claim of the kind at issue here, a plaintiff must show that 1) the defendant made or initiated calls or texts 2) to plaintiff's cellular telephone number 3) using an automatic telephone dialing system. While consent is mentioned in the TCPA, it is not an element of a plaintiff's prima facie case; rather, it is an affirmative defense to be raised and proved by TCPA defendants. *See, e.g.*, *Paldo Sign & Display Co. v. Wavener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014). Regardless, there are no individualized issues of consent because the Class is limited to those who sought to revoke consent by texting "stop" or "stop cmh tips."

### a. Common Proof that Defendant Made or Initiated the Texts

Whether or not Defendant made or initiated the texts can be resolved for all Class members in a single adjudication. Defendant either made or initiated the text messages coming from its short code numbers, or it did not. The text messages sent during the Class period all followed the same processes (as discussed below). There are no individual questions.

### b. Common Proof that the Messages were Sent to Cellular Phones

Defendant's system was programmed to automatically send text messages. Text messages are overwhelmingly, if not exclusively, sent to mobile devices. It would not make sense to send text messages to a landline, for example, nor did Defendant's process for soliciting new subscribers allow or anticipate subscription requests would come from anything but a cell phone. (Exhibit C, Defendant's Amended Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories ("Interrogatories"), Response 8 ("Potential subscribers were offered the

9

opportunity to subscribe to the Healthy Tips program by sending a "short code" text message.")) Furthermore, to the extent concerns remain, there are companies that can take a list of numbers and determine which of those numbers belong to a cellular telephone. *See, e.g.*, *Booth v. Appstack, Inc.*, Case No. 13-1533, 2016 U.S. Dist. LEXIS 68886, *27-28 (W.D. Wash. May 24, 2016) (finding no individualized issues in determining whether a number belonged to a cell phone because there was generally applicable methodology to determine this information).

### c. Common Proof of Use of an Autodialer

Whether the system Defendant used to send its text messages qualifies as an automatic telephone dialing system is susceptible to common proof. During the Class period, Defendant used the same setup: its own HealthBlaster application, which stored a database of telephone numbers to be sent text messages, interfaced with Twilio's Application Programming Interface ("API") to automatically tell Twilio when to begin sending text messages, what messages to send, and to which telephone numbers to send the messages. (Exhibit D, Excerpts from Deposition of Dham Pathervellai ("Dham Depo."), 70:7-72:17, 75:6-17, 85:17-90:6, 130:6-131:3) All of its "Healthy Tips" text messages were sent during the Class period used this setup. (*Id.* at 72:3-8, 108:21-110:5) Thus, whether this setup qualifies as an automatic telephone dialing system can be resolved for all Class members by common proof.

### d. Common Proof of Revocation of Consent

Any argument that individualized issues of consent defeat predominance fails here. "Courts determine whether issues of individualized consent defeat commonality and predominance in a

10

TCPA[sic] on a case-by-case basis, after evaluating the specific evidence available to prove consent." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014).

The proposed Class is not defined to include every person to whom Defendant sent text messages, which would potentially invite individualized issues. The proposed Class only includes those who sent a "stop" or "stop cmh tips" text message to Defendant. Whether such a message was sufficient for revocation is susceptible to common proof, and if either or both phrases are revocation, the issue of consent would be resolved by common proof.

### e. Common Proof of Damages

Damages here are susceptible to common proof. Plaintiff only seeks statutory damages for herself and the proposed Class. "Statutory damages [under the TCPA] follow a finding of liability as a matter of course." *Fitzgerald v. Gann Law Books*, Case No. 11-04287, 2014 U.S. Dist. LEXIS 174567, *10 (D.N.J. Dec. 17, 2014). As a result, should liability be established, damages can be shown on a class-wide basis simply by multiplying $500 or $1,500 by the number of text messages Defendant sent to Class members.[5]

### f. Common Proof of Willfulness

In the Seventh Circuit, the court in *Bridgeview Health Care Ctr., Ltd. v. Clark* "adopt[ed] the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute." Case No. 09-C-5601, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013). Since all text messages included in the proposed Class definition

---

[5] Plaintiff's allegations of concrete injury in the complaint are, while accurate, primarily intended to demonstrate to the Court that Plaintiff has Article III standing rather than to serve as independent categories of compensable damages. Only the named plaintiff needs to have Article III standing. *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) ("[T]he standing inquiry for class actions pertains only to the class representative."). Even if this were not the case, the pled "concrete injuries," are universal to the class.

followed the same pattern, whether Defendant acted according to this standard can be resolved on a class-wide basis.

### vi. Rule 23(b)(3): Superiority

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Courts in this District and Circuit have repeatedly deemed the class action to be a superior procedural vehicle to resolve TCPA claims, rejecting arguments that other mechanisms might be preferable. *See, e.g.*, *Birchmeier*, 302 F.R.D. at 255 (N.D. Ill. 2014) (finding that defendant's assertion that hearing individual actions in small claims or federal or state trial courts "would not be a superior way of binding individual claims together given the efficiencies the class action mechanism creates"); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 339 (E.D. Wisc.) (rejecting argument that Congress intended to remove TCPA from purview of Rule 23). Factors to be considered include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D). These factors weigh heavily in favor of finding a class action to be superior.

Not only were no other cases related to Defendant's text messaging program on file prior to the instant litigation, there have been no other cases filed in the 1.5 years since this case began. This suggests a lack of interest in individually controlling the prosecution or defense of separate actions. It is also desirable to concentrate this litigation generally and in this forum. Concentrating the litigation respects judicial economy given that, if there were no certified class, individuals with claims would need to come forward and litigate the exact same issues individually that can be

efficiently resolved on a class-wide basis, including the expensive-to-litigate ATDS issue. Concentrating the litigation here makes sense as well. This is the only pending case, and it is pending in Defendant's home district, which is also an easily-accessible location. There are also not likely to be any difficulties managing a class action. The Class is relatively small, it is ascertainable, and there are no individualized issues with which to contend.

Accordingly, the class action mechanism is the superior method of resolving this matter.

### vii. Ascertainability

Seventh Circuit courts require that a class be "ascertainable", which means that the "classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). This is a less stringent requirement in the Seventh Circuit than it is in other circuits. *Id.* at 661. Seventh Circuit courts check for three common problems: classes that are defined too vaguely; classes that are defined by subjective criteria; and classes that are fail-safe.

The Class definition here avoids all three problems. It is defined clearly. There are no subjective criteria involved, focusing instead objectively on persons who sent a "stop" or "stop cmh tips" text message. And it is also not fail-safe. A fail-safe class definition is one that is "defined in terms of success on the merits." *Mullins*, 795 F.3d at 661. No liability determination is necessary to determine membership in the proposed Class. If a person sent to Defendant a "stop" or "stop cmh tips" text message and was sent a text other than an opt-out confirmation text after that point, that person is a Class member. This is different than defining the Class as "all persons who did not provide consent," as membership in such a class would arguably hinge on a finding of liability. It remains to be determined whether "stop" or "stop cmh tips" constitutes an adequate revocation of consent under the law, but this issue need not be resolved to determine Class membership. Regardless, even if the Court finds fault with the Class definition as fail-safe, this

does not preclude Plaintiff from moving forward with her class allegations, as this problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825.

It is also possible to determine the identity of a class member from a cellular telephone number alone.[6] This is frequently done in TCPA cases, and it will be possible to do here to a high degree of accuracy. *See* Declaration of Lisa Mullins. Indeed, Ms. Mullins estimates that it will be possible to identify and locate, at minimum, eighty-five to ninety percent of the Class members for whom the cellphone numbers are provided. (*Id.* at ¶ 6.) In another TCPA case, involving 76,190 class members, Ms. Mullins' company identified 87.78% of class members. (*Id.*) Exhibit A to Ms. Mullins' declaration lists several other comparable cases, including one with a class size of 93,993 (93.82% were identified) and another with a class size of 15,659 (97%).

In addition, if necessary, Plaintiff can enlist the help of carriers (voluntarily or via subpoena) to identify Class members and their contact information. The Class period is limited and recent (from July 28, 2015 until March 31, 2016) and the proposed Class is relatively small (2,239 persons), so this will not present any unusual manageability issues. This process has been approved previously in similar circumstances. *See also, e.g.*, *Birchmeier*, 302 F.R.D. at 245-50 (finding a 900,000-plus member class with a one-year class period ascertainable where reverse lookups and obtaining contact information from carriers were the proposed methods). While obtaining historical subscriber information[7] from carriers adds a degree of difficulty to

---

[6] Defendant has produced a list of all telephone numbers to which text messages were sent and when those texts were sent, and a list of all telephone numbers which had texted "stop" or "stop cmh tips" and when those texts were sent. Accordingly, Class membership can be determined by comparing these two lists.

[7] Carriers maintain historical subscriber information. According to a 2011 FOIA request by the ACLU, Verizon maintains subscriber information for three to five years, T-Mobile for five years; AT&T depends on length of service; and Sprint, Nextel, and Virgin for an unlimited duration. https://www.aclu.org/cell-phone-location-tracking-request-response-cell-phone-company-data-

ascertaining the Class, the class need not *actually* be ascertained prior to class certification, it need merely "be ascertain*able*." *Id.* at 245, 248 (quoting *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original). That it might be difficult does not change whether it is possible. *Birchmeier*, 302 F.R.D. at 248.

## CONCLUSION

Plaintiff respectfully asks the Court to certify the Class defined herein pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff further asks that the Court appoint Plaintiff Griffith as Class representative and her counsel Kristen L. Sagafi of Tycko & Zavareei LLP and Jeremy M. Glapion of Glapion Law Firm as Class counsel.

Date: August 10, 2017  */s/ Jeremy M. Glapion*_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

Kristen Law Sagafi
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Tel: 510.254.6808
Fax: 202.973.0950
ksagafi@tzlegal.com

---

retention-chart, last accessed July 27, 2017. According to a declaration submitted in 2014 in connection with the *Birchmeier* matter, as of that time, Verizon and AT&T maintained historical subscriber data for seven years and CenturyLink for seven years. *Birchmeier*, 302 F.R.D. at 247-48 (quoting declaration). The proposed class period begins well within any of these time periods.

15