# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTY GRIFFITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CONTEXTMEDIA HEALTH, LLC d/b/a OUTCOME HEALTH**<br><br>Defendant. | Case No.: 1:16-cv-02900<br><br>Honorable Elaine E. Bucklo |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM

Plaintiff Christy Griffith, for the reasons set forth in the accompanying memorandum and attached exhibits, hereby moves this Honorable Court for an Order 1) approving the proposed Settlement; 2) certifying the proposed Class; 3) appointing Plaintiff's attorney Jeremy M. Glapion of Glapion Law Firm and Kristen Law Sagafi and Andrew Silver of Tycko & Zavareei LLP as Class Counsel; and 4) as set forth in Plaintiff's Fee Petition [Dkt. 106], awarding attorneys' fees, costs, and a class representative service award.

Dated: November 1, 2018

*/s/ Andrew J. Silver*
Andrew J. Silver
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, DC 20036
Tel: 202.973.0900
Fax: 202.973.0950
asilver@tzlegal.com

Kristen Law Sagafi
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: 510.254.6808
Fax: 202.973.0950
ksagafi@tzlegal.com

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com


**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 1

III. THE SETTLEMENT ........................................................................................................... 2

    a.  Defined Class ............................................................................................................ 2

    b.  Monetary Relief ........................................................................................................ 2

    c.  Redistribution and Cy Pres ....................................................................................... 3

    d.  Prospective Relief .................................................................................................... 3

    e.  Release ..................................................................................................................... 3

    f.  Service Award .......................................................................................................... 4

    g.  Attorneys' Fees and Costs ....................................................................................... 4

    h.  Administration and Notice ...................................................................................... 4

IV. DISCUSSION ..................................................................................................................... 6

    a.  Legal Standard for Approval ................................................................................... 6

    b.  The Settlement is the Product of Arm's Length Negotiations. .............................. 6

    c.  The Settlement is Well Within the "Range of Reasonableness." .......................... 7

        i.  The Settlement Provides Substantial Relief in Light of the Risks of Continued Litigation ................................................................................................ 7

        ii.  Continued Litigation is Not in the Best Interests of Plaintiff or Members of the Class. ....................................................................................... 10

        iii.  Opposition to the Settlement. ........................................................................ 11

        iv.  Opinion of Counsel. ....................................................................................... 11

        v.  Stage of the Proceedings and Amount of Discovery Completed. .................. 12

    d.  Final Certification of the Settlement Class is Appropriate. ................................. 13

    e.  The Notice Program Satisfied Due Process. ......................................................... 13

V.  CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .................................................................... 7

*Arthur v. Sallie Mae, Inc.*,
   2012 WL 90101 (W.D. Wash. Jan. 10, 2012) ................................................................ 9

*Boggess v. Hogan*,
   410 F. Supp. 433 (N.D. Ill. 1975) .................................................................................. 6

*Burns v. Elrod*,
   757 F.2d 151 (7th Cir. 1985) ....................................................................................... 13

*CE Design v. Beaty Const., Inc.*,
   2009 WL 192481 (N.D. Ill. Jan. 26, 2009) .................................................................. 13

*City of Detroit v. Grinnell*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................................... 9

*Douglas v. Western Union Co.*,
   2018 WL 4181484 (N.D. Ill. Aug. 31, 2018) ................................................................ 6

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................... 13

*Eubank et al. v. Pella Corp. et al.*,
   753 F.3d 718 (7th Cir. 2014) ......................................................................................... 7

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) .................................................................................... 9

*Hispanics United v. Vill. of Addison*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................................... 7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ........................................................................ 8, 12, 13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................. 6, 7, 11

*In re Capital One Telephone Consumer Protection Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................... 8, 9

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
   No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. Feb. 20, 2013) ............................................... 9

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................... 11, 12

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ................................................................. 13

*In re Southwest Airlines Voucher Litig.*,
   2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................................................ 8

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................................... 6, 7, 12

*Kazemi v. Payless Shoesource, Inc.*,
  No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) .................................................... 9

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ..................................................................................... 8

*Malta v. Fed. Home Loan Mortg. Corp.,*
  2013 WL 444619 (S.D. Cal. Feb. 5, 2013) .................................................................... 9

*Ossola et al. v. American Express Company, et al.*,
  No. 13-cv-4836, Dkt. 368 (N.D. Ill. Nov. 16, 2016) .................................................. 8, 9

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) .......................................................................................... 7

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................... 10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................................ 6, 7, 11, 12

*Wright v. Nationstar Mortg. LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................ 9

**Statutes**

47 U.S.C. § 227(b) ................................................................................................................ 1, 9

Fed. R. Civ. P. 23 (e)(1) ........................................................................................................... 13

Fed. R. Civ. P. 23(c)( 2)(B) ............................................................................................... 13, 14

I. **INTRODUCTION**

Plaintiff Christy Griffith ("Plaintiff" or "Griffith") respectfully moves the Court for final approval of a class action settlement ("Settlement" or "Settlement Agreement," *see* Exhibit A) reached with Defendant ContextMedia Health, LLC d/b/a Outcome Health ("Defendant" or "Outcome Health"). As discussed in more detail below, Plaintiff alleges, on behalf of herself and a class of similarly situated persons, that Defendant sent autodialed text messages to individuals after those individuals had opted out, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). The proposed Settlement resolves all class claims in this matter.

Under the Settlement, Defendant is required to pay or cause to be paid $2,900,000 into a Settlement Fund[1] for a class of approximately 2,239 phone numbers who were sent 128,193 text messages after having opted out.[2] Eligible claimants will receive a *pro rata* per-text payment from this Settlement Fund. Following the notice and claims period, a robust 10.6 percent of class members filed claims for payment. Further, no class members objected to the settlement, nor did any exclude themselves. After estimated administrative costs and requested attorneys' fees, costs, and service award [*see* Dkt. 106], and pending claim verification, their claims will result in payment of approximately $128.66 per text message to class members who filed claims, for an average payment of $7,487.62 per class member. No money will revert to Defendant. Furthermore, as of March 2016, Defendant stopped its text messaging program at issue and has not resumed it.

II. **BACKGROUND**

Plaintiff outlined the history of this case in her Motion for Preliminary Approval [Dkt. 101-1 at 1-4] and incorporates that discussion herein. On April 4, 2018, the Court preliminarily approved of the Settlement; ordered that Notice be sent; set deadlines for claims, objections, and exclusions; and set this matter for a Fairness Hearing on November 16, 2018. [Dkt. 105.]

---

[1] Unless otherwise specified, capitalized terms carry with them the same definitions contained in the Settlement Agreement. [*See* Exhibit A.]
[2] As discussed herein, a total of 2,285 individuals received text messages, as certain phone numbers had multiple owners during the class period.

1

### III. THE SETTLEMENT

The relevant details of the Settlement are set forth herein.

#### a. Defined Class

The proposed Settlement Class[3] is defined as follows:

> [A]ll persons within the United States to whose cellular telephone number Defendant ContextMedia Health, LLC sent, or caused to be sent, a text message, other than an opt-out confirmation text message, as part of its "Healthy Tips" campaign, after Defendant's records or the records of any entity with whom Defendant contracted to provide text messaging services indicate that the telephone number to which the text messages were sent had previously sent a text message with the single word "STOP" or the single phrase "STOP CMH TIPS," regardless of capitalization.

Settlement Agreement § 2.29. The Class consists of approximately 2,239 phone numbers which were sent 128,293 text messages. [Dkt. 101-1 at 4.] 2,285 total individuals were potentially affected, as certain of the telephone numbers were owned by multiple individuals during the class period. *See* Declaration of Rachel McCown ("McCown Decl.") ¶ 9.

#### b. Monetary Relief

The Settlement Agreement requires Defendant to create a non-reversionary fund of $2,900,000, which Defendant has funded in accordance with the Settlement Agreement. Settlement Agreement § 4.02. This fund will be used to provide cash awards to eligible claimants who file an approved claim, as well as cover all administrative costs and attorneys' fees and costs, as fully set forth in the Settlement Agreement. *Id.* Each claimant who filed an Approved Claim will receive a *pro rata* per-text amount based on the number of text messages sent to a claimant after he or she opted out of receiving text messages. *Id.* § 4.04. To submit a claim, members of the Class needed to fill out and submit a claim form, which could be done either electronically through

---

[3] Excluded from the Settlement Classes are: (1) the Judges presiding over the Actions and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and file a timely request for exclusion from the Settlement Class; (4) all Persons whose claims against the Defendant have been fully and finally adjudicated and/or released; and (5) the legal representatives, successors or assigns of any such excluded Persons.

2

the Settlement Website or via U.S. mail, including through a postage-paid claims form that was included with the notice. *Id.* § 9.02. Checks will be mailed to those submitting Approved Claims within thirty (30) days of the Effective Date. *Id*. § 9.03. These checks will be valid for 180 days. *Id.* After a robust notice program—*see* Section III.h, *infra*—231 Class Members, or 10.6% of the Class, filed valid claims on the Settlement Fund, comprising claims on 13,444 or 10.5% of all text messages. *See* McCown Decl. ¶ 22. After deducting estimated fees, costs, and Plaintiff's incentive award, Class Members will receive an award of approximately $128.66 per text message, or an average payment of $7,487.62 per Class Member. The class member that received the highest number of text messages (270) [*see* Dkt. 101-1 at 1 n.2] will receive approximately $34,736.89. No class members either objected to or excluded themselves from the Class. McCown Decl. ¶ 24.

### c. Redistribution and Cy Pres

Should checks remain uncashed after 210 days of the first distribution with an amount exceeding $1.00 per claimed text message or more, this remaining amount will be distributed, based on pro rata distribution, to those who previously filed an Approved Claim and cashed their checks. Settlement Agreement § 7.03. In the event the amount uncashed is less than $1.00 per claimed text message, the parties have agreed to propose a mutually agreeable *cy pres* recipient, the American Diabetes Association, to the Court. *Id.* No amount will revert to Defendant under any circumstances. *Id.*

### d. Prospective Relief

Though not a direct condition of the Settlement, Defendant ceased the "Healthy Tips" program as of March 2016 and such program has not been resumed. Defendant also agreed to withdraw a petition it filed with the FCC for an exemption from liability in this case, and Defendant has withdrawn that petition. Settlement Agreement, § 13.05.

### e. Release

Upon the Effective Date, members of the Settlement Classes who do not opt out will have released all Released Claims against each and every one of the Released Parties. *Id.* § 13.04. Plaintiff and Settlement Class members further agree not to sue any of the Released Parties with

3

respect to any of the Released Claims, and agree to be forever barred from doing so in any court of law or equity, arbitration proceeding, or any other forum. *Id.* However, nothing in the Settlement Agreement is intended to restrict any Settlement Class Member from contacting, assisting or cooperating with any government agency. *Id.*

### f. Service Award

The Settlement reflects that Plaintiff Griffith will seek a $10,000 service award. *Id.* § 5.04. This award will be paid out of the Settlement Fund. *Id.* This award is subject to this Court's approval, and the Settlement is not conditioned on the requested service award (or any service award) being granted. *Id.* As more fully set forth in Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award ("Fee Petition") [Dkt. 106], the award is warranted. Fee Petition at 15.

### g. Attorneys' Fees and Costs

On July 13, 2018, as set forth in the Settlement (*see* § 5.02), Class Counsel applied for an award of attorneys' fees and costs. *See* Fee Petition. Class Counsel sought $966,666.67 in fees, or one-third of the Fund (35.52% after costs and the requested service award). As discussed in the Fee Petition, this amount is in line with Seventh Circuit precedent and appropriate to compensate Class Counsel for achieving the relief described herein. *Id.* at 5-14. Class Counsel also sought $68,910.73 in costs. *Id.* at 14-15. The Settlement is not contingent upon the Court's approval of attorneys' fees or costs, and the notice to class members informed Class Members that Class Counsel intended to seek up to $966,666.67 and their costs. [Dkt. 101-2 at 52.]

### h. Administration and Notice

The Claims Administrator is Epiq Class Action & Claims Solutions, Inc. ("Epiq"). All costs of notice and administration shall be paid from the Settlement Fund. *Id.* § 2.17. The Claims Administrator is responsible for administering the Settlement, which includes, but is not limited to, performing lookups to ascertain the identities of certain members of the Class, processing claims, disseminating notice, maintaining records, providing reports to Class Counsel and Defendant's counsel, creating the settlement website, establishing and maintaining the toll-free telephone number, and issuing all settlement payments contemplated herein.

To identify Class Members, Class Counsel issued subpoenas to Verizon, T-Mobile, AT&T, and Sprint for subscriber information. These subpoenas covered approximately 96% of Class Members. For those whose information was not provided in response to one of these subpoenas – either due to state laws or due to being a customer of a different carrier than one of those mentioned above – the Administrator engaged a third-party (PacificEast) to perform a reverse lookup to identify the owner of the telephone number during the time of the text messages. McCown Decl. ¶ 9; Settlement Agreement, § 8.02.

On June 29, 2018, Epiq sent mailed notice, with a prepaid claim form, to 2,156 Class Members for whom it was able to obtain addresses or, in other words, 94.3% of all Class Members. McCown Decl. ¶ 11. In the week ending September 28, 2018, Epiq mailed reminder postcard notices to all Class Members to whom the initial mailing did not result in a returned postcard. *Id.* ¶ 13. In total, from both mailed notices, only 63 addresses were determined to be undeliverable. *Id.* ¶ 15. Thus, Epiq was able to directly reach over 97.1% of the class members to whom it attempted mailed notice or, in other words, a deliverable rate of 94.3% of the Settlement Class. *Id.*

Class Members were also notified via Facebook ads, targeted to Class Members using their phone numbers. *Id.* ¶ 16. Approximately 69,127 impressions were generated by the Facebook advertising. *Id.* This equates to over 30 impressions per affected phone number. There is also a settlement website providing a downloadable claim form (included in Exhibit A to the Settlement Agreement), the long form notice (included in Exhibit B to the Settlement Agreement), important case documents, important case deadlines, and on which Class Members can file an electronic claim. Settlement Agreement, § 8.04; *see* https://www.healthytipstcpasettlement.com/. The settlement website received 2,639 page hits from 514 unique visitors, and a toll-free number operated by Epiq received 80 calls, and Epiq placed additional outgoing calls in response to inquiries from Class Members. McCown Decl. ¶¶ 17-20.

In short, Epiq reached the overwhelming majority of Class Members via mailed notice, which it supplemented with targeted Facebook notice. The robust claims rate and the website and toll-free engagement—as compared to the class size—reflects a successful notice program.

5

## IV. DISCUSSION

### a. Legal Standard for Approval

"A district court may approve a settlement only if it is 'fair, reasonable, and adequate.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) ("*Synfuel*"). When the proposed settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced", there is a general presumption of fairness. H. Newberg, A. Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975). Nevertheless, even where there have been arm's-length negotiations, courts must scrutinize the fairness, reasonableness, and adequacy of the proposed settlement. Specifically, "a district court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *Synfuel*, 463 F.3d at 653. (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)); *see also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (listing same factors). The first factor – the strength of the plaintiff's case balanced against the amount offered in the settlement – is the most important. *Synfuel*, 463 F.3d at 653. These factors should be considered in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199; *Douglas v. Western Union Co.*, No. 14 C 1741, ___ F. Supp. 3d ____, 2018 WL 4181484, at *5 (N.D. Ill. Aug. 31, 2018) (same) (quoting *Isby*).

### b. The Settlement is the Product of Arm's Length Negotiations.

The Settlement herein was reached after nearly two years of litigation, extensive discovery, several dispositive motions, and an all-day mediation before Judge Holderman, followed by more investigation, discussion, and negotiation. Class Counsel investigated and developed this case through discovery, multiple depositions, and expert discovery, ultimately obtaining a sufficient record to certify the class and, Class Counsel believes, win on the merits.

Throughout, the Parties were in strong disagreement on every aspect of this case, and these disagreements were expressed at a lengthy and often frustrating mediation in October 2017. Indeed, the mediation did not immediately resolve the Parties' differences, and it took three more months of litigation and discussion to resolve. The Settlement was not reached until February 2018, a month after the Court granted class certification. [Dkt. 92.] The Settlement was thus reached after arm's-length negotiations, and there was no collusion. Courts are entitled to rely on the opinion of competent counsel, especially where counsel are qualified, discovery has taken place, and the settlement is the product of arms-length negotiations. *See Isby*, 75 F.3d at 1200; *Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting a "strong initial presumption of fairness attaches" where settlement is "the result of arm's length negotiations," and where counsel are "experienced and have engaged in adequate discovery").

    **c.** **The Settlement is Well Within the "Range of Reasonableness."**

        **i.** **The Settlement Provides Substantial Relief in Light of the Risks of Continued Litigation.**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re AT&T*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by comparing "the net expected value of continued litigation to the class" to the "range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284–85 (7th Cir. 2002) and *Synfuel*, 463 F.3d at 653); *see also Eubank et al. v. Pella Corp. et al.*, 753 F.3d 718, 727 (7th Cir. 2014) (holding that the district court should "estimate the likely outcome of a trial . . . in order to evaluate the adequacy of the settlement").

However, "[t]he Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science," and courts need only

7

"estimate and come to a ballpark valuation" of the class's claims. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (citation and internal quotations omitted); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Ultimately, since a settlement is a compromise, "courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to the plaintiffs.'" *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (quoting *In re AT&T*, 270 F.R.D. at 347). Parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347.

Here, although Plaintiff believes her TCPA claims against Defendant are strong, she recognizes that Outcome Health's liability was far from certain. Plaintiff undertook this litigation knowing that she would face staunch opposition from a Defendant with substantial resources, strong legal defenses, and a willingness to litigate. Plaintiff nonetheless successfully obtained a large, non-reversionary $2.9 million Settlement Fund, which will result in large per-text and total payments to all Class Members making a claim on the Settlement Fund.

1. Settlement Benefits

The Settlement requires Outcome Health to pay $2,900,000, which has already been funded, from which approved claims will be paid *pro rata* per-text, after fees and costs. Settlement Agreement § 4.04. Based on the claims made, each claimant will receive approximately $128.66 per text, for a total average payment of $7,487.62 per claimant. *See* Section II.b, *supra*. This is an exceptional result for three main reasons.

First, it significantly exceeds the award in many other approved TCPA class action settlements. Just recently, a court in this District granted final approval to a TCPA class settlement in which each claimant would be paid $89 *total* on a 6.9% claims rate. *Ossola et al. v. American Express Company, et al.*, Case No. 13-cv-4836 (N.D. Ill.) (Dkt. 368.). Here, the Settlement is paying each claimant approximately $128.66 *per text*; in other words, claimants are receiving more

8

money for each text message received than the claimants in *Ossola* received total. And since the median number of post-"STOP" text messages sent to Class Members here was 49, a significant portion of claimants stand to receive orders of magnitude more than the *Ossola* claimants. The Settlement here also meets or exceeds the relief in other TCPA settlements. *See, e.g., Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) (finally approving settlement of $12.1 million for a class of 2.3 million people, where each claimant would receive $45); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) (approving settlement that paid $52.50 to each claimant).[4]

Second, while the Settlement does not provide full statutory relief, this "does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell*, 495 F.2d 448, 455 n.2 (2d Cir. 1974). This is particularly true here. While 47 U.S.C. § 227(b) mandates a *minimum* of $500 per call or text in violation of the statute, which would amount to $64 million here, such a judgment would be worth nothing if it could not be collected, as was (and remains) possible in this case.[5] It was also possible that Defendant would prevail on its pending request for exemption from the FCC on the basis that these unwanted text messages were allegedly caused by a technical glitch, Dkt. 101-3 ¶ 10, which was only withdrawn as a result of the Settlement. Settlement Agreement, § 13.05.

---

[4] *See also, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290 BEN (NLS), 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Capital One*, 80 F. Supp. 3d at 790 (providing $34.60 per claiming class member); *Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, 2012 WL 90101, at *3 (W.D. Wash. Jan. 10, 2012) (approving settlement where class members could receive between $20 and $40); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261, Dkt. 97 (S.D. Cal. Feb. 20, 2013) (providing a $20 voucher, which could be redeemed for $15 cash after nine-month waiting period).

[5] At the time of the Settlement, there were questions about the size of a judgment Outcome Health could withstand. [Dkt. 101-3 ¶ 9.] Since then, its founder and another member of company leadership left the board. *See* Ally Marotti, *Outcome Health's former leaders step down from board*, Chicago Tribune (June 21, 2018), *available at* http://www.chicagotribune.com/business/ct-biz-outcome-health-leaders-off-board-20180621-story.html.

Third, this Settlement allows for relief much sooner than would come in its absence. If the Settlement was not approved, trial would be months away at best, and even if Plaintiff prevailed at trial, subsequent appeals would add years. Guaranteeing a sizable Settlement to the Class now far outweighs the potential benefit of proceeding to trial and verdict. Dkt. 101-3 ¶ 9.

With these factors considered, $2,900,000 is more than fair, reasonable, and adequate.

2. Strength of Plaintiff's Case

While liability would be disputed, Plaintiff continues to believe in the strength of her case. She has prevailed on every merits-related motion to date and has successfully certified a class. Plaintiff's expert report is strong, and, barring a change in the law, Plaintiff has a clear (although not guaranteed) path to showing Defendant's liability for statutory damages under the TCPA.

Liability, however, is only part of the equation. There is little value in a judgment that cannot be collected due to the finances of Defendant. There is real question about Defendant's ability to pay a judgment of $64 million, and it appears, by all accounts, that collecting such a judgment would be unlikely. *See supra* note 5. The Settlement amount strikes a balance between providing genuine relief for Class Members and the risks of nonpayment (either due to a loss on the merits or Defendant's viability) due to continued litigation. [Dkt. 101-3 ¶¶ 9-13.] In addition, as mentioned, Defendant filed a request for exemption from the FCC, which was subsequently supported by numerous well-connected interested parties, including the American Bankers Association and the U.S. Chamber Institute for Legal Reform. Defendant withdrew this petition as a result of the Settlement, but it would have presented a risk had litigation continued.

### ii. Continued Litigation is Not in the Best Interests of Plaintiff or Members of the Class.

As discussed, because of concerns about Defendant's ability to pay, as well as uncertainties in the TCPA legal landscape, it is a genuine possibility that, no matter how strong Plaintiff's claims look now, when all is said and done, Class Members would recover little, if anything. The Settlement allows for definite relief and, all things considered, will increase the likelihood of recovery relative to continued litigation. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586

(N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."); *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (finding that settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time.").

The Parties would therefore incur significant additional expenses if the Settlement is not approved, including the costs of further discovery, additional expert witness costs, filing and defending more pre-trial motions, and the enormous expenses involved in conducting a class action trial, requiring evidence and witnesses from across the country to be convened. If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now . . . ." *In re AT&T*, 789 F. Supp. 2d at 964. The Settlement, by contrast, avoids the uncertainty of trial—and potentially lengthy appeals—and instead provides valuable relief to the Settlement Class Members now. Therefore, the second *Synfuel* factor also weighs in favor of final approval.

### iii. Opposition to the Settlement.

As discussed above, after a robust notice program, no Class Members either objected to or excluded themselves from the Settlement. *See* Section II.b, *supra*. Thus, there is literally no opposition to the Settlement. Courts routinely approve settlements even where objectors are present, or if many class members have opted out. *E.g.*, *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020–21 (finding that where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"); *In re AT&T*, 789 F. Supp. 2d at 965 (finding that exclusion or objection rate of 0.01% of class members was "remarkably low" and supported settlement approval). Since nobody objected or excluded themselves, this *Synfuel* factor could not weigh more heavily in favor of approval.

### iv. Opinion of Counsel.

Class Counsel strongly believes this Settlement is not only fair, but exceptional. As set forth above, eligible claimants will receive more *per text* what many TCPA class settlements pay *per member*. And many Class Members will see payments north of $1,000. Cumulatively, Class

11

Counsel have litigated dozens of TCPA cases, have extensively studied and reviewed the TCPA class action landscape as part of their practice, and have litigated this particular case through discovery and motion practice. Dkt. 101-3 ¶¶ 14-22. This enables Class Counsel to effectively evaluate the Settlement. *See, e.g. In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 giving significant weight to "the unanimously strong endorsement" by "well-respected attorneys."). Thus, this *Synfuel* factor strongly supports approval.

### v. Stage of the Proceedings and Amount of Discovery Completed.

The final *Synfuel* factor—the stage of the proceedings and amount of discovery completed at the time of the settlement—also supports final approval. 463 F.3d at 653. This factor generally favors approval of a settlement where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough." *Isby*, 75 F.3d at 1200 (citation and internal quotations omitted). However, courts also regularly approve settlements achieved *prior to* the commencement of formal discovery, especially where counsel "have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T*, 270 F.R.D. at 350.

As mentioned, Class Counsel took four depositions—two depositions pursuant to Rule 30(b)(6), and two depositions of third-parties (one of Defendant's former employees and Defendant's text messaging provider). Defendant served written discovery and deposed Plaintiff Griffith. Plaintiff also served three sets of requests for production and two sets of interrogatories and requests for admission. Furthermore, Plaintiff hired an expert, Mr. Dave Thomas, who reviewed Defendant's text messaging software at a code level and provided a detailed report as to the application's capabilities. [*See* Dkt. 101-3 ¶¶ 2-4.]

There has also been significant, meaningful, and dispositive motion practice. Plaintiff successfully opposed Defendant's Motion to Dismiss, and, on January 11, 2018, successfully certified her proposed class. A different result on either motion would have effectively ended this case. Accordingly, the final *Synfuel* factor, like the four others, weighs in favor of final approval and supports a finding that the Settlement is fair, reasonable, and adequate.

### d. Final Certification of the Settlement Class is Appropriate.

As the Court has already certified a virtually identical class, Plaintiff will not repeat the arguments made in favor of Class Certification here, and instead relies on Plaintiff's briefing in support of class certification, docket entries 60 and 82. The only difference between the Settlement Class definition and the certified class definition is the removal of the date restriction, so as to compensate any individuals who potentially received actionable text messages outside of the class period. However, based on discovery conducted to date and Defendant's representations upon agreeing to the Settlement, this change did not impact the class size or scope in any way.

### e. The Notice Program Satisfied Due Process.

When a class is certified through settlement, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1); *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016). Where, as here, a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)( 2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). The class notices must state in plain, easily understood language the details of the settlement, including the nature of the case, the class definition(s), the claims, and class members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350-51 (N.D. Ill. 2010).

The requirement of the "best notice that is practicable" does not mandate that every individual class member must receive direct notice. *See Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification"); *CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("The Federal Rules [] require the best notice that is 'practicable'

13

not perfect notice. The word 'practicable' implies that the plaintiff should be afforded some flexibility with respect to providing notice to unknown, potential class members.").

In this case, the notice plan implemented following preliminary approval satisfies the requirements of due process and Rule 23. Indeed, prior to preliminary approval, Class Counsel issued subpoenas targeting mailing addresses associated with Class Members' telephone numbers, which covered 96% of all class members. [Dkt. 101-1 at 15-16.] Epiq performed reverse lookups for the remaining class members, and, together with addresses obtained from the cell phone carriers, was able to attempt mailed notice for 2,156 out of 2,285 potential settlement class members (the 2,285 number is greater than the 2,239 phone numbers affected because some phone numbers had multiple owners during the class period). McCown Decl., ¶ 9. Ultimately, after accounting for returned mail, Epiq reached over 94.3% of Class Members by direct mail. *Id.* ¶¶ 15. And Epiq's notice was even more fulsome than initially contemplated, as an additional round of reminder postcards were mailed. *Id.* ¶ 13. Epiq supplemented the mailed notice with Facebook advertising targeting all of the cell phone numbers belonging to Class Members, accounting for approximately 69,127 banner impressions. *Id.* ¶ 16.

The notices contained the information required under Rule 23(c)(2)(B) and invited recipients to visit the Settlement Website or call a toll-free number where they could obtain more information and get answers to frequently asked questions. *Id.* ¶ 11 and Attachment B. Additionally, the notices informed the Settlement Class Members of their right to object or exclude themselves from the Settlement, as required by Rule 23(e)(4). *Id.* Class Members were able to file a claim via (i) a pre-paid detachable post-card included with the mailed notice, via a claim form that can be requested through the website or from the administrator, or (ii) directly through the Settlement website. *Id.* ¶¶ 11, 17 and Attachment B.

Thus, because the Settlement's multi-part Notice Plan included direct notice to all Settlement Class Members who could be reasonably identified using Defendant's records and fully apprised Settlement Class Members of their rights, it satisfied the requirements of due process and Rule 23. *See also* Section III.h, *supra*.

## V. CONCLUSION

Plaintiff respectfully requests that the Court 1) approve the proposed Settlement; 2) certify the proposed Class; 3) appoint Plaintiff's attorneys Jeremy M. Glapion of Glapion Law Firm and Kristen Law Sagafi and Andrew Silver of Tycko & Zavareei LLP as Class Counsel; and 4) as set forth in Plaintiff's Fee Petition, award attorneys' fees, costs, and a class representative service award.

Dated: November 1, 2018

/s/ Andrew J. Silver
Andrew J. Silver
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, DC 20036
Tel: 202.973.0900
Fax: 202.973.0950
asilver@tzlegal.com

Kristen Law Sagafi
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: 510.254.6808
Fax: 202.973.0950
ksagafi@tzlegal.com

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com